UNITED STATES of America, Plaintiff-Appellee,

v.

Dennis Dwayne BUCKNER, Defendant-Appellant.

No. 81–5642.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 10, 1983.

Decided Sept. 16, 1983.

Dennis D. Buckner, pro se.

Michael T. Pate, Louisville, Ky., for defendant-appellant.

Alexander Taft, U.S. Atty., Richard A. Dennis, Asst. U.S. Atty. (argued) Louisville, Ky., for plaintiff-appellee.

Before CONTIE and WELLFORD, Circuit Judges, and MILES*, District Judge.

WELLFORD, Circuit Judge.

The defendant appeals his conviction by a jury in the United States District Court for the Western District of Kentucky on bank robbery charges.  he contends that his warrantless arrest was invalid, and that evidence seized at the time of the arrest therefore should have been suppressed.

The issues raised in this appeal are whether an arrest warrant and/or search warrant was required to arrest the defend-

---

* Honorable Wendell A. Miles, Chief Judge, United States District Court for the Western Dis-   trict of Michigan, sitting by designation.

ant at his mother's home, and whether, if one was required, the failure to obtain one can be justified by the existence of exigent circumstances.

## I.

The defendant was charged with a robbery which took place on January 8, 1981, at approximately 2:30 p.m. at a branch of the First National Bank of Louisville. Federal Bureau of Investigation (FBI) agents and Louisville Police Department officers responded to the scene. According to the testimony of Thomas McWade, an FBI agent, the investigation at the scene established that a lone robber had instructed a teller to put money in a large manila envelope, which was placed by the robber in a U.S. mail box across from the bank, according to a witness. The envelope, which was removed shortly thereafter by a postal inspector, was addressed to the defendant at 3289 DuVall Drive. The officers took the envelope back to the bank and verified the money it contained as being the stolen money. Sometime thereafter, but by approximately 4:00 p.m., the FBI agents arrived at the Louisville Police Department Fourth District substation where they contacted Detective Ronald Brubrink who had arrested the defendant on at least one prior occasion. The state and federal officers arrived at 3289 DuVall, the address reflected on the envelope, at approximately 5 p.m. The defendant was not at that address, but one Claudette Thompson, who was present there, informed them that his mother lived nearby, apparently in the same housing project.[1]

Buckner testified that he and his brother had been at 3289 DuVall Drive earlier and had seen Claudette Thompson from whom they borrowed money to buy some beer. He said "they went straight to [his] mother's house" after getting beer and a "reefer" and that the officers arrived about an hour later. He testified further that the "inside door" was open, although the screen door was closed, but one "can see straight into the house." The officers did not get a precise address for the mother's residence from Thompson; rather, they got only a description of where the residence was located, and they had some trouble locating it. After the officers knocked on at least one door in error, Detective Brubrink approached 3214 DuVall and, according to his testimony, knocked on the door which was answered by Buckner's brother. When the door was opened, Brubrink was able to see appellant Buckner sitting in a chair in the apartment. Brubrink and the other officers then entered, informing Buckner that the FBI had a bench warrant for him for carrying a concealed deadly weapon.[2] Buckner was searched and the officers conducted a brief check of the apartment for other occupants. Buckner's mother was not present. In the living room where they arrested Buckner, they seized in plain view manila envelopes resembling the one in which the stolen money had been placed, a pen, and a field jacket which they "patted down" for weapons. The jacket contained a notebook, with the following note: "Larry Hughes, use bank at 4th Street, 2:30."[3]

No arrest warrant or "detainer" for Buckner was actually produced, either at the time of the arrest or at the suppression hearing. Both Agent McWade and Detective Brubrink, however, testified that they had knowledge of an existing warrant. McWade referred to it as a "detainer";

1. Thompson, who according to Agent McWade identified herself as Buckner's girlfriend, apparently resided at that address. Buckner gave his address as 1707 South 37th Street.

2. Consent to the entry was not argued in this case, nor it is raised by the government as a basis for the actions of the officers. The facts surrounding the entry are strongly contested. The officers' version has been related here, but Buckner testified that Detective Brubrink never knocked and never mentioned a warrant.

McWade testified that he did not ask Buckner or the other occupant of the mother's residence for permission to search. Agent McWade and Buckner both testified that the latter was arrested for bank robbery. The brother did not testify at the suppression hearing, but Buckner himself said he gave no permission for a search.

3. Larry Hughes was Buckner's co-defendant. He was found not guilty by reason of insanity.

Brubrink claimed McWade had informed him of an outstanding warrant and that he had verified with the National Crime Information Center (NCIC) that there was a bench warrant for Buckner for carrying a concealed deadly weapon.

At the close of the evidence at the suppression hearing, the district court denied the motion to suppress, but then withdrew the ruling to permit defense counsel to file a brief. Defense counsel moved for suppression of the envelopes and pen;[4] and he argued that the items seized at the time of arrest must be suppressed. On the same day the district court denied the suppression motions it entered the following findings:

1. The law enforcement officers had a lawful right and duty to arrest the defendant at the time and place where the evidence sought to be suppressed was located.

2. The material sought to be suppressed was within the clear unobstructed view of the arresting officers at the time of the arrest.

## II.

This case involves the search of the premises of a third party which resulted in the arrest of the defendant and the seizure of evidence which was used against him. The defendant maintains that the entry into his mother's home by the police was a search and that, absent exigent circumstances, a search warrant was necessary.

Two recent Supreme Court cases, *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), form the framework for our discussion. In *Payton,* the Supreme Court held that, absent consent or exigent circumstances, the police could not enter a defendant's home to arrest him without at

least an arrest warrant and reason to believe that he was at home. The Court further held, however, that no search warrant was necessary because "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388. A different situation was presented in *Steagald.* The police had an arrest warrant but went to the home of a third party rather than to the home of the person named on the warrant. They entered the third party's home, found incriminating evidence and prosecuted the third party homeowner.[5] The Supreme Court held that a search warrant was necessary in such instances because an arrest warrant for another person did not justify the search of a third party's home.

The case now before us is not directly on point with either *Payton* or *Steagald.* The *Payton* rule does not directly apply because the defendant was not arrested in his own home. *Steagald* is also not on point because the person prosecuted in this case was the person named in the arrest warrant.

## A.

In cases such as this one where the defendant is arrested in the home of a third party and is challenging the search of that home, the courts should first focus on the issue of standing. In the usual case, the defendant will not have had a legitimate expectation of privacy in the premises which were searched and therefore will be unable to challenge the search. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The fact that the entry may have violated the constitutional rights of

---

**4.** It is unclear why defense counsel omitted reference to the notebook. Since he later argued for suppression of "the items seized at the time of Dennis Buckner's arrest," the motion for suppression of the notebook was also before the district court.

**5.** In reality, the defendant in *Steagald* probably was not the owner of the home searched but since his standing was not challenged in a timely manner the Supreme Court analyzed the case under the assumption that Steagald had a legitimate expectation of privacy in the home. For the sake of clarity, we will refer to Steagald as the homeowner in that case.

the third party homeowner would have no effect on the defendant's criminal conviction. *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). The third party homeowner may, of course, pursue a civil action alleging that the entry into his home without a search warrant violated his civil rights. *Dunn v. State of Tennessee,* 697 F.2d 121 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

■ We find nothing in this record to indicate that the defendant had a legitimate expectation of privacy in his mother's apartment. The defendant did not live there and there are no facts other than his relationship to the occupant of the apartment which would show that he had standing to challenge the search of his mother's apartment. For that reason, we affirm the district court's denial of the defendant's suppression motion.

### B.

■ Even if the defendant did have standing to challenge the search, the suppression motion was correctly denied because the police had a warrant for his arrest and reason to believe that he was in his mother's apartment. *Payton, supra; United States v. Clifford,* 664 F.2d 1090 (8th Cir.1981).

The fact that the defendant was the person named on the arrest warrant mandates application of *Payton* rather than *Steagald.* Any other interpretation of the two Supreme Court decisions would either disregard one of the opinions or lead to incongruous results.

Under *Payton,* the police could have entered the defendant's own home if they had a warrant for his arrest and reason to believe that he was inside. It would be illogical to afford the defendant any greater protection in the home of a third party than

he was entitled to in his own home. That illogical result, however, is precisely what would happen if we accepted the defendant's contention that *Steagald* required a search warrant in this case.

The defendant's position is seemingly supported by our recent decision in *Dunn* where we cited *Steagald* for the proposition that "absent exigent circumstances or consent, law enforcement officers cannot legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." 697 F.2d at 126. That statement is an overly broad reading of *Steagald* in that it fails to limit the *Steagald* rule to those cases, like *Dunn* and *Steagald,*[6] where the homeowner, rather than the person named on the arrest warrant, is challenging the search. This appeal would have presented a *Steagald* situation if the defendant's mother had been arrested. Applying *Steagald* to the facts of this case would lead to the incongruous situation whereby a defendant named in an arrest warrant and arrested in the home of a third party would be afforded greater protection than the homeowner himself would have received under *Payton* if the homeowner had been named in the arrest warrant. *See Clifford,* 664 F.2d at 1093.

### III.

Having held that the defendant, even if he had standing to challenge the search at all, was only entitled to the protection afforded by *Payton, i.e.,* a warrant for his arrest and reason to believe that he was inside the premises searched, we consider his contention that the search was invalid because the police did not have a valid warrant for his arrest. The necessity for an arrest warrant is only an issue under our alternative holding applying *Payton.* With regard to our holding that the defendant lacked standing to challenge the entry at

---

**6.** The only difference between *Dunn* and *Steagald* is the nature of the challenge to the search. *Dunn* involved a civil suit against police who entered the third party's home to make an arrest whereas *Steagald* involved a suppression motion made by the homeowner after he was charged on the basis of evidence found in his home during a search for a person named in an arrest warrant. In both cases, the third party homeowner challenged the search and was not the person named in the arrest warrant.

all, the sole question is whether there was probable cause to arrest him for bank robbery. Such probable cause clearly existed.

■ The police, at the time of the entry into the defendant's mother's apartment, did not have an arrest warrant in their possession. In fact, at that time, no warrant had been issued with respect to the bank robbery. The police, however, did have reliable knowledge of a state bench warrant for the defendant's arrest on unrelated charges. No more was necessary. The fact that the officers did not have the arrest warrant in hand is of no consequence. *Fed.R.Crim.P.* 4(d)(3); *United States v. Turcotte,* 558 F.2d 893, 896 (8th Cir.1977); *United States v. Holland,* 438 F.2d 887, 888 (6th Cir.1971).

As noted above, the state arrest warrant was not produced at the suppression hearing. The defendant, however, did not demand that the government produce the state warrant or object to its non-production.

The defendant had the burden of production and persuasion at the suppression hearing, *United States v. Murrie,* 534 F.2d 695, 697–98 (6th Cir.1976), and we find that he failed to make any showing whatsoever that the state warrant did not exist or was invalid at the time of his arrest.

Besides an arrest warrant, the *Payton* rule requires that the police have reason to believe that the defendant is inside the premises to be searched. The record reveals that that requirement was satisfied in this case.

### IV.

In summary, we conclude that the defendant did not have a legitimate expectation of privacy in the premises which were searched and therefore could not challenge the search. Since the police had probable cause to arrest the defendant for bank robbery, both the arrest and the search were valid as to him. Alternatively, assuming that the defendant did have a legitimate expectation of privacy in his mother's apartment, the entry was proper because the police had a warrant for his arrest plus reason to believe that he was inside.

The judgment of the district court is AFFIRMED.