IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2001

### STATE OF TENNESSEE v. JEFFREY K. SHAW

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-87     J. Randall Wyatt, Jr., Judge**

**No. M2001-00563-CCA-R3-CD - Filed January 9, 2002**

On February 5, 2001, the Defendant, Jeffery K. Shaw, entered a plea of guilty to felony weapon possession.  Pursuant to Rule 37 (b)(1)(i) of the Tennessee Rules of Criminal Procedure, the Defendant sought to reserve a certified question of law to be reviewed by this Court.  In this appeal, the Defendant contends that the trial court erred in denying his motion to suppress evidence and statements obtained as a result of the Defendant's arrest in the home of a third party.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Jeffrey A. DeVasher, Nashville, Tennessee, for the appellant, Jeffrey K. Shaw.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Derrick Scretchen, Assistant District Attorney General.

**OPINION**

On September 12, 1999, Detective James Arendall of the Metro Police Department arrested several suspects as a result of an investigation concerning counterfeit ticket sales at the Tennessee State Fair.  One of the suspects informed Detective Arendall that the Defendant was the supplier of the counterfeit tickets.  The suspect also provided the Detective with an address where the Defendant was "staying." Detective Arendall entered the Defendant's name in a police laptop computer and discovered a photograph of the Defendant and learned that the Defendant had outstanding warrants for probation violation and a weapons charge.

Detective Arendall then proceeded to the address given by the suspect and knocked on the door.  A man asked the Detective to identify himself before opening the door, and the Detective

asked the man if he had the correct address. The Detective requested that the man behind the door open it so the Detective could determine if he was at the correct address. When the man opened the door, the Detective could see the Defendant sitting on a sofa in the living room. The man at the door then stepped back, and the police entered and arrested the Defendant. Incident to the arrest, the police discovered a loaded .38 revolver under the sofa cushion on which the Defendant was sitting. During the arrest, the Defendant informed the police that the gun belonged to him and that the counterfeit ticket scheme was his idea.

Detective Arendall acknowledged on cross-examination that he did not have a search warrant to enter the house, that he did not recall the name of the man who answered the door, and that he had no information regarding the ownership of the house. Detective Arendall also testified that he was acting on the information given him by his original suspect concerning the Defendant's whereabouts and that he never informed the man who answered the door that he was there to arrest the Defendant.

After the hearing on the motion to suppress, the trial court found "that what the detective did was reasonable under all of the circumstances, that they had a right to arrest the man that they had an arrest warrant for, sitting right in front of them." However, in the Order Denying the Defendant's Motion to Suppress, the trial court relied on the existence of exigent circumstances and the consent of the man who answered the door in denying the motion.

The Defendant contends that the police entered the home in search of him, and, absent consent or exigent circumstances, a search warrant was required in order for the police and Detective Arendall to conduct such a search. The Defendant relies on the United States Supreme Court's decision in Steagald v. United States, 451 U.S. 204 (1981), to support his argument. The State relies on Payton v. New York, 445 U.S. 573 (1980), in asserting that no search warrant was required to enter the home of the third party and arrest the Defendant. For the following reasons, we agree with the State.

The parties are correct in asserting that the Supreme Court's decisions in Payton and Steagald form the perimeters for our decision. In Payton, the Court held that, absent consent or exigent circumstances, the police could not enter a defendant's home to arrest him without an arrest warrant and reason to believe that he was at home. See Payton, 445 U.S. at 603. The Court also held that no search warrant was necessary because "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. A similar situation was presented in Steagald, where the police again entered a home to execute an arrest warrant. However, in Steagald, the police entered the home of a third party, not named in the warrant, and seized incriminating evidence which they later attempted to use to prosecute the third party. The Court held that a search warrant was necessary because the arrest warrant issued for the defendant did not justify the search of the third party's home. See Steagald, 451 U.S. at 222.

The present case does not fit neatly under either Payton or Steagald. Unlike Payton, here the Defendant was arrested pursuant to an arrest warrant in the home of a third party. However, unlike

<u>Steagald</u>, the Defendant is not that third party whose home was searched and who is now seeking to suppress evidence found by the police.

In <u>United States v. Buckner</u>, 717 F.2d 297 (6th Cir. 1983), the Sixth Circuit addressed a case whose facts were strikingly similar to the case presently before us. In <u>Buckner</u>, police went to the home of the defendant, who was suspected in a bank robbery, pursuant to an arrest warrant only to be told that the suspect was at his mother's residence, a few apartments away. The police proceeded to the mother's apartment, and, upon arriving, noticed that the door was open and the suspect in question was visible through the screen door of the apartment. The officers entered the apartment and arrested the defendant.

The <u>Buckner</u> court first sought to determine whether the defendant had standing to challenge the search of the home of a third party, stating that "[i]n the usual case, the defendant will not have had a legitimate expectation of privacy in the premises which were searched and therefore will be unable to challenge the search." <u>Id.</u> at 299, <u>citing</u>, <u>United States v. Salvucci</u>, 448 U.S. 83, 89-92 (1980); <u>Rakas v. Illinois</u>, 439 U.S. 128, 144 (1978). The fact that the entry into the home of the third party may have violated the constitutional rights of that third party has no effect on the validity of the arrest of a defendant who is subject to the arrest warrant. <u>See</u> <u>Buckner</u>, 717 F. 2d at 300, <u>citing</u>, <u>United States v. Payner</u>, 447 U.S. 727, 731-32 (1980).

The <u>Buckner</u> court concluded that the defendant did not have standing to challenge the search because he possessed no legitimate expectation of privacy in the third party's home. <u>See</u> <u>Buckner</u>, 717 F.2d at 300. Similarly, in the present case, there is no evidence that the Defendant has standing to challenge the entry into the home in which he was arrested. However, the trial court assumed the Defendant had standing and precluded the Defendant from presenting evidence to show standing. Therefore, we will address the Defendant's claim on its merits.

Assuming that the Defendant did have the requisite expectation of privacy to challenge the entry into the home, the motion to suppress was properly denied because the police had a warrant for the arrest of the Defendant and reason to believe he was in the home. <u>See</u> <u>Payton</u>, 445 U.S. at 603. The fact that the Defendant was the person named in the arrest warrant mandates the application of <u>Payton</u> rather than <u>Steagald</u>. <u>See</u> <u>Buckner</u>, 717 F.2d at 300. Under <u>Payton</u>, Detective Arendall could have entered the Defendant's own home if he had a warrant for the Defendant's arrest and reason to believe he was present in the home.[1] <u>See</u> <u>Payton</u>, 445 U.S. at 603; <u>State v. Clark</u>, 844 S.W.2d 597, 599 (Tenn. 1992). In <u>Buckner</u>, the Sixth Circuit stated that "[i]t would be illogical to afford the defendant any greater protection in the home of a third party that he was entitled to in his own home." <u>Buckner</u>, 717 F.2d at 300.

---

[1] Tennessee law clearly acknowledges a police officer's right to enter a home to make an arrest. Tennessee Code Annotated section 40-7-107 authorizes entry into a home to effectuate a warrantless arrest or an arrest pursuant to a warrant under certain circumstances. Additionally, in Tennessee, the issuance of an arrest warrant is a "command" for law enforcement to take the named suspect into custody wherever he may be found. <u>See</u> Tenn. Code Ann. § 40-6-201.

We agree with the reasoning of the Sixth Circuit.  Therefore, the Defendant was only entitled to the protection given him under Payton that requires law enforcement to obtain a warrant for his arrest and have reason to believe he is inside the premises.  Detective Arendall had a warrant for the Defendant's arrest and also positively identified him as the man sitting on the couch within the house.

Accordingly, we find that the entry into the home for the purpose of arresting the Defendant was proper because the police had an arrest warrant and reason to believe he was within the house.[2]  Because the entry and arrest were valid, the search incident to the arrest that  uncovered the pistol under the cushion on which the Defendant was sitting was also valid.  See Chimel v. California, 395 U.S. 752, 762-63 (1969).  Accordingly, we find that the trial court properly denied the Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, we find that the trial court properly denied the Defendant's Motion to Suppress because the police had a warrant for the Defendant's arrest and reason to believe he was in the residence in which he was found.  The judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE

---

[2]We note that the trial judge, while denying the Defendant's Motion to Suppress at the hearing on the motion, relied on a finding that the entry was not an unreasonable entry because the Detective had an arrest warrant for the Defendant and saw the Defendant inside the house.  However, in the written Order denying the motion, the Court relied upon exigent circumstances and consent to validate the arrest.  There is no evidence of exigent circumstances in the record.  Additionally, the testimony of Detective Arendall that the man answering the door stepped back into the house allowing the police to enter is the only suggestion that consent was given to enter.  The burden is on the prosecution to prove that consent was freely and voluntarily given.  See State v. Jackson, 889 S.W.2d 219, 221 (Tenn.Crim.App. 1993).  That consent will not be lightly inferred.  See State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992).  The evidence of consent was insufficient.