

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2005

# USA v. Stewart

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Stewart" (2005). *2005 Decisions*. Paper 1309.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1309

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2212
_____

UNITED STATES OF AMERICA

v.

MARQUI STEWART,

Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

District Court No. 02-cr-00808-1
District Judge:  The Honorable Petrese B. Tucker

_____

Submitted pursuant to LAR 34.1(a)
March 31, 2005

Before:  ALITO, SMITH, and FISHER, <u>Circuit</u> <u>Judges</u>

(Filed: April 27, 2005)

_____

OPINION OF THE COURT

_____

PER CURIAM:

Marqui Stewart challenges his convictions for various drug trafficking and conspiracy charges.[1]  For the reasons set forth below, we affirm the judgment of the District Court.

As we write for the parties only, we do not set out the facts.

**I.**

We review the District Court's denial of a motion to suppress for clear error as to the facts, and exercise plenary review of the District Court's application of the law to those facts.  United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).  The denial of a suppression motion may be affirmed on any ground supported by the record.  See United States v. Belle, 593 F.2d 487, 499 (3d Cir. 1979).

The law enforcement officers had a warrant for Stewart's arrest and had every reason to believe that he resided at 6718 Media Street.   He was seen there the day before, his car was parked in the vicinity, and the officers saw him coming down the stairs when they knocked on the door at 6:00 a.m.  The warrant and the reasonable belief that Stewart was in the house gave the officers the authority to enter and seize him.  Payton v. New

---

[1]  In response to an inquiry from the Clerk of Court regarding the applicability of United States v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005), Stewart's counsel advised us by letter dated April 4, 2005, that "Blakely v. Washington, 124 S.Ct. 2531 (2004) has no applicability to the above captioned appeal since the sentence that was given was statutorily mandated by the applicable statutes."  Thus we do not address the applicability of Booker to Stewart's sentence.

York, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").

Stewart argues that the arrest warrant provided insufficient authority for the entry because 6718 Media Street was not his residence and because the Supreme Court held in Steagald v. United States, 451 U.S. 204 (1981), that officers seeking to execute an arrest warrant in the residence of a third-party need a search warrant in order to enter. (See Appellant's Br. at 11-13.) Thus, asserts Stewart, the officers' entry was illegal.

Stewart is wrong for several reasons. First, there is evidence that Stewart resided at 6718 Media Street; among other things, he listed the address as his residence on the biographical information report submitted to the Philadelphia Police Department. Second, even if 6718 Media Street were not Stewart's residence, Stewart would still be unable to challenge the officers' entry. Steagald protects the rights of a resident third-party, not a non-resident arrestee, and a non-resident arrestee has no standing to assert the rights of a resident third-party. See United States v. Buckner, 717 F.2d 297, 299-300 (6th Cir. 1983). Third, even if Stewart had some assertable right or privacy interest against unlawful entry to a building in which he did not reside, the entry in question was obtained with a warrant and thus was not unlawful and did not violate any rights Stewart might have. As we have written:

-3-

A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's [F]ourth [A]mendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another.

United States v. Agnew, 385 F.3d 288, 291 (3d Cir. 2004) (quoting United States v. Underwood, 717 F.2d 482, 484 (9th Cir. 1983) (en banc) (parallel citations omitted)), judgment vacated on other grounds by --- S.Ct. ----, 2005 WL 405647 (February 22, 2005)).[2] Finally, by fleeing the building, Stewart abandoned any privacy interest he may have had in it. See, e.g., United States v. Winchester, 916 F.2d 601, 603-04 (11th Cir. 1990) (fugitive who left rental property and drove past 25 officers preparing to stake out cottage abandoned the property). The officers' entry into 6718 Media Street was therefore valid.

After entering, the officers conducted an appropriate protective sweep of the premises to determine if anyone was present in the building. In the course of the sweep, they came upon multiple firearms on the second floor of the house and discovered that the three men had escaped through a skylight to the roof. After finding the three men on the roof, the officers obtained a search warrant for 6718 Media Street based on what they had seen during their protective sweep.

In sum, there was no illegality or constitutional infirmity in the procedure. The

---

[2]     On February 22, 2005, the Supreme Court granted certiorari in Agnew and ordered that the judgment be vacated and the case remanded to the Third Circuit "for further consideration in light of United States v. Booker, 543 U.S. ___ (2005)."

-4-

officers followed to arrest Stewart, and the District Court was right to deny Stewart's motion to suppress the evidence seized during the search.

## II.

This Court reviews the District Court's denial of a motion for a new trial for abuse of discretion. Hook v. Ernst & Young, 28 F.3d 366, 370 (3d Cir. 1994).

Stewart contends the government suggested in its opening statement and through the testimony of the officers that he had committed prior bad acts. Specifically, he contends the government did so by alluding to the existence of a warrant for his arrest. For this reason, Stewart demanded a new trial.

As the District Court observed, however, the potential danger in mentioning the arrest warrant related not so much to the existence of an arrest warrant per se, but to the content of the specific arrest warrant at issue: it was an arrest warrant for a homicide. (App. 567.) The government's opening statement and the non-specific testimony about an arrest warrant did not suggest Stewart was being arrested for anything other than the crimes with which he was actually charged. Furthermore, it is unreasonable of Stewart to insist that the government not be allowed to mention the existence of a valid arrest warrant. For if the government had not offered a lawful reason for entering the building, the jury might have wondered whether the entry was legal.

## III.

We review the District Court's evidentiary rulings for abuse of discretion. United

States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003).

Stewart argues that Clouden, a government cooperator, should not have been allowed to testify on direct examination concerning threats to him and his family made by defendants in another case — threats that led Clouden to attempt to withdraw his guilty plea and end his agreement to cooperate and testify in this and the other case. Stewart contends that by eliciting Clouden's responses on this topic, the government improperly bolstered Clouden's credibility.

In fact, this line of questioning was a proper attempt to blunt an expected line of cross-examination and to directly address a matter that arguably impeached Clouden's credibility. Because a cooperation agreement can be a very desirable thing — co-defendants sometimes compete to cooperate — an attempt to end a cooperation agreement naturally appears significant, and a skillful defense lawyer can make it appear suspicious. After all, why would someone give up a good thing? Without information indicating that Clouden's wavering was caused by threats to his person and his family, the jury could, for example, be led to believe that Clouden was wavering because he knew his testimony was untruthful and did not want to perjure himself. It was therefore proper to elicit testimony regarding the attempted withdrawal from the plea agreement. See United States v. Saada, 212 F.3d 210, 225 n. 16 (3d Cir. 2000) (approving admission of a plea agreement's provision requiring truthful testimony by a cooperating witness in response to, or in reasonable anticipation of, defense counsel's impeachment of witness).

-6-

**IV.**

In reviewing Stewart's claim that the evidence is not sufficient to establish possession of a firearm in furtherance of a drug trafficking crime, we examine the "totality of the evidence, both direct and circumstantial," and must credit "all available inferences in favor of the government." United States v. Gambone, 314 F.3d 163, 170 (3d Cir.), cert. denied, 540 U.S. 815 (2003). We will sustain the verdict if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (citations omitted).

In this case, the government presented overwhelming evidence on which a jury could rely to find Stewart guilty of violating 18 U.S.C. § 924(c). Clouden and Griffin testified that Stewart resided with them at 6718 Media Street and engaged in the full-time distribution of illegal drugs. Clouden testified that he and Stewart sold and distributed drugs together. Detectives found drugs and large amounts of cash in the building. They also found seven guns, six of which were loaded, scattered on the second floor of the building. Clouden testified that Stewart knew of the guns, that they were accessible to him, and that he shared control of at least some of them (the "big guns") with Clouden and Griffin. And Clouden and Griffin both testified that Stewart had actual physical possession of the Glock .45 caliber pistol when Clouden and Stewart attended a "linen party" a couple of days before the search of 6718 Media Street.

-7-

**V.**

Stewart contends that the District Court erred in failing to charge the jury that the dominion and control sufficient to establish constructive possession is not established by mere proximity, mere presence, or mere association.

Where a jury charge is attacked for legal error, we must determine whether "the charge as a whole fairly and adequately submits the issues in the case to the jury." Bennis v. Gable, 823 F.2d 723, 727 (3d Cir. 1987). If the District Court has properly articulated the relevant legal criteria, we review the particular language it used for abuse of discretion. United States v. Pelullo, 964 F.2d 193, 215 n.21 (3d Cir. 1992).

The instructions concerning actual and constructive possession were legally correct and complete. The District Court made clear that, in order to have actual possession of an object, a person must have direct physical control or authority over the object, such as the control one has when one holds an object in one's hands. And in order to have "constructive" possession over an object, the District Court explained, a person must have the ability to take actual possession of the object when the person wants to do so. Because mere proximity, mere presence, or mere association is not enough for even constructive possession, these instructions adequately conveyed to the jury that constructive possession is not established by mere proximity, mere presence, or mere association.

**VI.**

For the foregoing reasons, we affirm the Judgment of the District Court.