WATFORD, Circuit Judge,
concurring:
Do parolees have a greater expectation of privacy in someone else’s home than they have in their own home? I can’t think of any reason why they should. Yet that is the rule we established in United States v. Howard, 447 F.3d 1257 (9th Cir. 2006), which we, as a three judge panel, are bound to follow here. For the reasons the court explains, faithful application of Howard requires us to affirm the district court’s suppression ruling. But, like the district court, I think that decision is unsound and warrants reexamination.
Although once open to debate, it’s now settled that a criminal defendant may seek suppression of evidence discovered during an illegal search only if the defendant’s own Fourth Amendment rights were violated. Rawlings v. Kentucky, 448 U.S. 98, 104-06, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A defendant may not vicariously assert the Fourth Amendment rights of others. Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Thus, the Supreme Court has held, a defendant generally cannot seek suppression of evidence discovered during an illegal search of an acquaintance’s purse, or of a friend’s car in which the defendant is merely a passenger. Rawl-ings, 448 U.S. at 106, 100 S.Ct. 2556; Ra-kas, 439 U.S. at 148-49, 99 S.Ct. 421.
Had the warrantless search at issue here occurred at Mr. Grandberry’s own home, he would not have been able to seek suppression of the evidence. As a parolee subject to California’s standard condition authorizing warrantless, suspicionless searches of his residence, Mr. Grandberry has no legitimate expectation of privacy in his own home. See United States v. Lopez, 474 F.3d 1208, 1213 (9th Cir.2007), overruled in part on other grounds by United States v. King, 687 F.3d 1189 (9th Cir.2012) (en banc). That’s true notwithstanding the fact that, among the places protected by the Fourth Amendment, “the home is first among equals.” Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013). Nowhere is an individual’s claim to a legitimate expectation of privacy stronger than in her own home. See, e.g., Kyllo v. United States, 533 U.S. 27, 31, 37, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). So, one might ask, if a parolee’s expectation of privacy in his own home is nil, how could he have an expectation of privacy in someone else’s home?
The only answer I’ve heard is that Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), supposedly so provides. There the Supreme Court held that an overnight guest has a legitimate expectation of privacy in her host’s home. Id. at 96-97, 110 S.Ct. 1684. But that case does not help parolees who are overnight guests in someone else’s home. As the Fifth Circuit has explained, “Olson simply extends to the houseguest the Fourth Amendment rights he would have in his own home.” United States v. Taylor, 482 F.3d 315, 318 (5th Cir.2007). Since parolees subject to California’s warrantless search condition have no Fourth Amendment rights in their own homes, they have no legitimate expectation of privacy they can take with them to anyone else’s home. See id. at 319.
That does not mean, of course, that the host’s Fourth Amendment rights are in any way diminished. If the police conduct a warrantless search of the host’s home, on the unsupported belief that the parolee resides there, the host’s Fourth Amendment rights are undoubtedly violated. The host could seek suppression of any *984 evidence the government tried to use against him in a subsequent criminal prosecution, and could pursue a civil action against the offending officers under 42 U.S.C. § 1983 or state tort law. See Motley v. Parks, 432 F.3d 1072 (9th Cir.2005) (en banc), overruled in part on other grounds by United States v. King, 687 F.3d 1189 (9th Cir.2012) (en banc). But the parolee cannot seek suppression of evidence discovered during an illegal search of the host’s home, because the parolee’s own Fourth Amendment rights were not violated. Taylor, 482 F.3d at 319; see Rakas, 439 U.S. at 134, 99 S.Ct. 421.
The principle that a defendant can’t assert greater Fourth Amendment rights in someone else’s home than she has in her own home has been around for some time. In fact, we held exactly that while sitting en banc thirty years ago: “A person has no greater right of privacy in another’s home than in his own.” United States v. Underwood, 717 F.2d 482, 484 (9th Cir. 1983) (en banc); see also United States v. Buckner, 717 F.2d 297, 300 (6th Cir.1983) (“It would be illogical to afford the defendant any greater protection in the home of a third party than he was entitled to in his own home.”). To be sure, the context there was different. Like the Sixth Circuit in Buckner, we were explaining why, under Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), a defendant’s own Fourth Amendment rights were not violated when the police entered a third party’s home without a search warrant to arrest the defendant. The defendant could not seek suppression of evidence discovered in the third party’s home, we held, because the police had a warrant for the defendant’s arrest and thus, under Payton, could have entered the defendant’s own home without a search warrant to arrest him there. Underwood, 717 F.2d at 483-84. Despite the difference in context, I see no reason why the principle established in Underwood should not apply with equal force to defendants whose homes are subject to warrantless, suspi-cionless searches by virtue of their status as parolees.
The only other observation I would add is the one Judge Noonan made in his concurrence in Howard. He rightly observed that the effect of our holding in that case is to give parolees who’ve decided to re-offend a “safe house” for storing contraband and conducting illicit activities. Howard, 447 F.3d at 1269 (Noonan, J., concurring, dubitante). This case is a perfect illustration of that phenomenon: Mr. Grandberry, intent on resuming his drug-trafficking activities, set up shop in his girlfriend’s apartment and stored his drugs and firearm there. After all, if you’re on parole, why take a chance stashing contraband at your own residence when you can easily do so at someone else’s, safe from warrantless police searches so long as you occasionally stay there overnight? Allowing parolees to establish these sorts of safe houses surely frustrates the State’s legitimate interest in supervising parolees to reduce recidivism, protect public safety, and promote reintegration into productive society. See Samson v. California, 547 U.S. 843, 853-54, 856 n. 4, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006).
In short, Howard is a decision ripe for reconsideration. We engaged in no Fourth Amendment analysis there to support the rule we adopted; in fact, we did not so much as cite Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the only Supreme Court decision on which our rule could have been grounded. See Howard, 447 F.3d at 1262. In addition, we decided that case before the Supreme Court decided Samson, which clarified that parolees have “severely di *985 minished expectations of privacy by virtue of their status alone,” and that the State has “substantial” interests in subjecting parolees to “privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.” Samson, 547 U.S. at 852, 853, 126 S.Ct. 2193. If we’re going to adhere to the rule we adopted in Howard, we should do so after squarely confronting and resolving the doctrinal inconsistencies that rule seems to create.