United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 15, 2007**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-60136
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LARRY TAYLOR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

Before REAVLEY, JOLLY, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Larry Taylor ("Taylor"), who had earlier been convicted in the Mississippi courts, was a participant in the state's Earned Release Supervision Program ("ERS"). While he was on supervised release, the Mississippi authorities conducted a warrantless search of his girlfriend's residence, where Taylor was an overnight guest, and found a firearm. Taylor was indicted in federal court for being a felon in possession of a firearm. He moved to suppress the firearm as evidence from an unconstitutional search. The district court denied this motion and Taylor entered a conditional guilty plea pending the outcome of this appeal. Finding no error, we affirm.

Taylor was convicted of business burglary and sentenced to seven years. After serving part of his term, he was released into ERS. As a condition of his participation in this program, Taylor was required to sign a form that stated that he understood that he would retain "inmate status" during his participation in ERS and thus was "subject to search of [his] person, residence, or vehicle by [his] Field Officer or any other law enforcement officer at any time." While in ERS, Taylor's Field Officer was Jennifer Dykes ("Dykes").

In November 2004, Dykes contacted Keith Roberts, an officer with the Mississippi Department of Corrections, to report that a complaint had been made against Taylor for malicious mischief, that Taylor was reported to have a handgun, and that Taylor had failed to report to the county field office as directed.

On November 15, 2004, Department of Corrections officers, together with fugitive task force agents from the United States Marshal Service and Canton Police Officers, went to an apartment complex where they believed Taylor was located. The apartment was not Taylor's residence and was rented to a woman. The Canton Police had a misdemeanor arrest warrant for the defendant based upon the malicious mischief complaint, but none of the agencies had a search warrant for the apartment. The team was aware that a girlfriend of the defendant, Katherine Johnson, had obtained a .40

caliber pistol on October 22, 2004, and that the defendant might be in possession of it when they located him.

The team went to the apartment and knocked on the door, but no one answered. The officers then forcibly entered the apartment.[1] Taylor was located hiding in the back bedroom, where he was arrested. While he was being secured, one of the officers went searching for the .40 caliber pistol and found it in a dresser drawer in another bedroom.

Taylor was indicted in federal court under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for possessing a firearm after having been previously convicted of a felony. Taylor moved to suppress, arguing that the warrantless entry and search of his girlfriend's apartment were unlawful. Taylor testified at the suppression hearing that he told the Department of Corrections that he lived with his aunt at 466 Martin Luther King Drive, Canton Mississippi. He said that he was an overnight guest at his girlfriend's apartment and that he had no personal possessions with him other than his toothbrush. The district court conducted an evidentiary hearing and denied the motion, holding that the entry and search were justified by the consent Taylor executed upon entering the ERS program. Taylor entered a conditional plea of guilty to possession

---

[1] The parties differ here in their description of the events. The Government says that the team heard movement inside the apartment and observed the defendant looking out the back window. Taylor maintains that the officers, upon receiving no response to their knock, simply entered the apartment. This factual dispute is of no consequence, however, in the resolution of this case.

of a firearm in violation of 18 U.S.C. § 922(g)(1), reserving his right to proceed with the instant appeal.  Taylor was sentenced to 21 months of imprisonment and 3 years of supervised release.

## II.

On appeal, Taylor argues that the district court erred in denying his motion to suppress on the basis of his ERS consent. Taylor maintains that he expressly consented only to the search of his person, his residence, and his vehicle.  Taylor further argues that neither the misdemeanor arrest warrant, nor exigent circumstances, justified the arrest.

## A.

In reviewing the denial of a motion to suppress, factual findings are reviewed for clear error and the trial court's conclusions as to the constitutionality of the search are reviewed de novo.  United States v. Cherna, 184 F.3d 403, 406 (5th Cir. 1999), cert. denied, 529 U.S. 1065 (2000).  We may affirm the district court on any basis supported by the record.  United States v. McSween, 53 F.3d 684, 687 n.3 (5th Cir. 1995).

## B.

This case centers on the extent to which Taylor has rights to assert Fourth Amendment protections to his girlfriend's residence. Taylor claims standing as an overnight guest, relying on the Supreme Court's decision in Minnesota v. Olson, 495 U.S. 91 (1990). There, the Court held that a houseguest has a legitimate expectation of privacy in his host's home, sufficient to "enable

4

him to be free in that place from unreasonable searches and seizures." <u>Id.</u> at 98. Relying on <u>Olson</u>, Taylor contends that the misdemeanor warrant was insufficient to support the search, and that the search of the bureau in the second bedroom, which led to the discovery of the gun, was not a valid search incident to arrest.

Taylor fails to recognize that under <u>Olson</u>, his Fourth Amendment rights as a guest are limited to those that he could assert with respect to his own residence. In holding that an overnight guest has a reasonable expectation of privacy in his host's home, the Court explained that overnight lodgings serve the same purpose of providing privacy and security on a temporary basis as one's home does more permanently.

> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home, we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

<u>Id.</u> at 99. The Court ultimately affirmed the lower court's finding that an overnight guest has established a "sufficient connection with the premises to be treated <u>like a householder</u>" for standing purposes. <u>Id.</u> at 95 (emphasis added). <u>Olson</u> simply extends to the

5

houseguest the Fourth Amendment rights he would have in his own home.  Our holding here is consistent with the well-established principle that "the Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967).

## C.

Taylor's rights while on supervised release are more limited than those of the average citizen.  In United States v. Knights, 534 U.S. 112 (2001), the Supreme Court considered the effect of a consent statement similar to the one here on the warrantless search of a probationer's home.  The Court declined to decide "whether Knights' acceptance of the search condition constituted consent in the Schneckloth sense of a complete waiver of his Fourth Amendment rights," id. at 118, but instead determined that "the search of Knights was reasonable under [the] general Fourth Amendment approach of examining the totality of circumstances with the probation search condition being a salient circumstance."  Id. (internal quotation marks and citation omitted).  After weighing the effect of the probation condition on Knights's privacy interest, the Court concluded that the Fourth Amendment reasonableness inquiry "requires no more than reasonable suspicion to conduct a search of this probationer's house.  The degree of individualized suspicion required of a search is a determination of when there is sufficiently high probability that criminal conduct

6

is occurring to make the intrusion on the individual's privacy interest reasonable." Id. at 121.[2]

Presuming that Taylor was a houseguest, he was entitled to the same Fourth Amendment protections in his girlfriend's apartment that he would have received in his own home. The question therefore, is whether there was a sufficiently high probability that criminal conduct was occurring. In this case, unlike in Knights, the police had a misdemeanor arrest warrant at the time they entered the house. They also had evidence suggesting that Taylor was in possession of a firearm and that he was in violation of the conditions of his parole. This evidence is sufficient to support a determination that the police had reasonable suspicion that Taylor may have been engaged in criminal conduct.

This analysis does not address the question whether the police's warrantless entry may have violated the Fourth Amendment rights of Katherine Johnson, who occupied the apartment as a resident. Taylor cannot, however, reasonably assert that his Fourth Amendment rights have been violated by this intrusion.

---

[2] It is possible that even this reasonableness requirement has been eliminated. In Samson v. California, 126 S. Ct. 2193 (2006), the Supreme Court upheld the suspicionless search of a parolee's person by law enforcement, reasoning that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." Id. at 2198. We need not consider this distinction in Taylor's case, however, because the police had reasonable suspicion prior to the entry and search.

7

Under the Knights test, the search would have been lawful, had it occurred in his home.

## III.

For the foregoing reasons, the ruling of the district court denying Larry Taylor's motion to suppress is correct, and the judgment of conviction is

AFFIRMED.