**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 31880**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2007 Opinion No. 41** |
| Plaintiff-Appellant, | ) |
| | ) **Filed: June 12, 2007** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| ERNESTO CRUZ, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Ronald E. Bush, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case</u> <u>remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Thomas Tharp, Deputy Attorney General, Boise, for appellant. Thomas Tharp argued.

Molly J. Huskey, State Appellate Public Defender; Daniel R. Anderson, Deputy Appellate Public Defender, Boise, for respondent. Daniel R. Anderson argued.

_____

SCHWARTZMAN, Judge Pro Tem

The state appeals from the district court's order suppressing evidence the state sought to admit in the prosecution of Ernesto Cruz. For the reasons set forth below, we reverse and remand.

**I.**

**FACTS AND PROCEDURE**

Cruz was paroled after being convicted of possession of a controlled substance. Cruz agreed to abide by several parole conditions, including that he would "submit to a search of person or property, to include residence and vehicle, at any time and place by any agent of Field and Community Services and [he] does waive constitutional right to be free from such searches."

Almost a year after Cruz was released on parole, a parole officer received an uncorroborated tip from a probationer that Cruz was selling narcotics at a studio apartment. Although that apartment was not the residence that Cruz had reported to his supervising parole

1

officer, the probationer further informed the parole officer that Cruz was living at the studio apartment. The parole officer who received the tip consulted with Cruz's supervising parole officer and learned that Cruz was not home during a recent home visit and that Cruz had recently stated that he wished to move from his reported address. Additionally, two police officers, acting as part of a task force with parole officers, drove by Cruz's reported residence two to three times a day for a week and a half but never observed Cruz's vehicle parked in the area. The two police officers and the parole officer who received the tip then observed Cruz's vehicle parked, two evenings in a row, near the apartment where he was reported to have been selling narcotics and living. On the second evening they observed Cruz's vehicle parked nearby, the parole officer and two police officers went to the apartment to determine if he had changed his residence without permission and whether he was complying with the terms of his probation. The parole officer knocked on the front door, identified herself, and asked for Cruz. Cruz suggested that they give him a chance to exit to speak with them outside of the apartment. The officers then ordered Cruz to show his hands, but Cruz kept his left hand hidden behind the partially-opened door. The officers forcibly entered the apartment, handcuffed Cruz after a brief struggle, and took steps to ensure their safety by making a protective sweep and securing the apartment.

Cruz's girlfriend and her son, the resident occupants of the apartment, were both present when the officers entered. As one of the police officers closed the front door, he discovered four plastic bindles of methamphetamine lying on the floor in the area behind the front door where Cruz's left arm had been. Cruz admitted that the methamphetamine belonged to him. The parole officer discovered other items belonging to Cruz in the apartment, including two pairs of jeans and a few shirts on the bed; work boots on the floor; a coat; bottles containing drugs prescribed to him on top of a dresser; and his cell phone charger on an end table.

The state charged Cruz with possession of a controlled substance, I.C. § 37-2732(c)(1), for the methamphetamine found behind the front door.[1] Cruz moved to suppress this evidence as the fruit of an unlawful search. After a hearing, the district court issued an extensive decision, granting Cruz's motion to suppress. The district court found that, although Cruz was not permanently residing at his girlfriend's apartment, he visited the apartment almost every day and

---

[1]     The officers also found marijuana and drug paraphernalia during their search of the apartment. Neither Cruz nor his girlfriend were charged with possessing this contraband.

2

spent one to two nights a week there. The district court ruled that Cruz had a reasonable expectation of privacy in his girlfriend's apartment entitling him to challenge the search, and that the search was unlawful because Cruz did not have authority, as a nonresident of the apartment, to consent to the search. The state appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement in the Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution. *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993); *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct. App. 1993). Even if a search is improper, however, only an individual with a privacy interest that was invaded by the search may obtain suppression of evidence found. *State v. Hanson*, 142 Idaho 711, 716, 132 P.3d 468, 473 (Ct. App. 2006). We agree with the district court that Cruz had a reasonable expectation of privacy in his girlfriend's apartment which he frequented regularly, either as a social guest or "part-time" resident, and that he was therefore entitled to challenge the reasonableness of the search. *See Minnesota v. Olson,* 495 U.S. 91, 100 (1990); *United States v. Rhiger,* 315 F.3d 1283, 1287 (10th Cir. 2003); *United States v. Pollard,* 215 F.3d 643, 647-48 (6th Cir. 2000); *Morton v. United States*, 734 A.2d 178, 182 (D.C. 1999); *State v. Missouri*, 603 S.E.2d 594, 597-98 (S.C. 2004); *State v. Hess,* 680 N.W.2d 314, 322-23 (S.D. 2004). *See also* 6 Wayne R. LaFave, *Search and Seizure* § 11.3(b), at 151-52 (4th ed. 2004).

3

The state argues that the search of Cruz's girlfriend's apartment was reasonable because, as a parolee subject to searches of his person or residence at any time, Cruz had a significantly diminished expectation of privacy. Idaho appellate courts have long-recognized that parolees and probationers have a diminished expectation of privacy and will enforce Fourth Amendment waivers as a condition of parole or probation. *See, e.g. State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *State v. Peters*, 130 Idaho 960, 963, 950 P.2d 1299, 1302 (Ct. App. 1997). Even in the absence of a warrantless search condition, a parole or probation officer may conduct a search of a parolee or probationer and his or her residence if the officer has "reasonable grounds" to believe that he or she has violated a parole or probation condition and the search is reasonably related to the disclosure or confirmation of that violation. *See State v. Klingler*, 143 Idaho 494, 497-98, 148 P.3d 1240, 1243-44 (2006). In *Klingler*, the Idaho Supreme Court upheld the warrantless search of an *unsupervised* probationer's residence based upon an unsubstantiated tip from a police detective that Klingler "may be dealing drugs," coupled with the probationer's drug history which indicated a heightened need for supervision. *Id.*, 143 Idaho at 498, 148 P.3d at 1244. Thus, the mere likelihood of facts justifying the search can be sufficient to constitute reasonable grounds. *Id. See also State v. Anderson*, 140 Idaho 484, 487-88, 95 P.3d 635, 638-39 (2004) (unconfirmed tips from a neighbor regarding detected odor of suspected methamphetamine lab, coupled with prior drug history and other rumors, sufficient to establish "reasonable grounds" or "reasonable suspicion" for warrantless search as a condition of bail pending appeal).

The United States Supreme Court has recently analyzed the constitutionality of warrantless searches of parolees and probationers under the general Fourth Amendment approach of examining the totality of the circumstances. *See Samson v. California*, ___ U.S. ___, ___, 126 S. Ct. 2193, 2197 (2006); *United States v. Knights*, 534 U.S. 112, 118 (2001). Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *Samson*, ___ U.S. at ___, 126 S. Ct. at 2197; *Knights*, 534 U.S. at 118-19.

In *Knights*, a probationer challenged a warrantless search of his residence. The Supreme Court noted that the probationer's expectation of privacy was significantly diminished by a condition of his probation whereby he was subject to a search of his person or residence, without

4

a warrant or reasonable cause, by any probation officer or law enforcement officer at any time. The Court held that, when an officer has "reasonable suspicion" that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. *Knights*, 534 U.S. at 121. The Supreme Court declined to decide, however, whether the probation condition so diminished, or completely eliminated, the probationer's reasonable expectation of privacy that a search unsupported by individualized suspicion would have been reasonable. *See id.*, 534 U.S. at 120 n.6.

In *Samson*, the Supreme Court addressed the constitutionality of a search of a parolee on a public street conducted by an officer who possessed no individualized suspicion of the defendant, other than his knowledge that the defendant was a parolee. The parolee had agreed to a search condition, set forth by California law, whereby he was subject to search or seizure by a parole officer or other peace officer at any time, with or without a search warrant and with or without cause. *See* Cal. Penal Code Ann. § 3067(a) (West 2000). The Supreme Court held that a completely suspicionless search of the parolee on a public street was reasonable because the parolee's diminished expectation of privacy was outweighed by the state's substantial interest in supervising parolees. *See Samson*, ___ U.S. at ___, 126 S. Ct. at 2197-02. The parolee did not have an expectation of privacy that society would recognize as legitimate because of his status as a parolee, including the broad search condition. *Id.*, ___ U.S. at ___, 126 S. Ct. at 2199. While the Supreme Court reasoned that parolees have even fewer expectations of privacy than probationers, it disavowed the proposition that parolees, like prisoners, have no Fourth Amendment rights, *id.*, ___ U.S. at ___ & n.2, 126 S. Ct. at 2198 & n.2, and recognized California's prohibition against "arbitrary, capricious or harassing" parole searches. *Id.*, ___ U.S. at ___, 126 S. Ct. at 2202.

Subsequent to *Samson*, the Fifth Circuit addressed a parolee's challenge of a warrantless search of his girlfriend's apartment conducted while he was an overnight guest. *See United States v. Taylor*, 482 F.3d 315 (5th Cir. 2007). The officers who conducted the search had obtained a misdemeanor arrest warrant for the parolee based on a complaint made against him for malicious mischief. The officers were also aware that the parolee had failed to report to the county field office as directed and had information that the parolee was located at his girlfriend's apartment and could be in possession of a gun that she had recently purchased. The officers

5

went to the apartment and, after knocking and receiving no response, forcibly entered. They found the parolee hiding in a back bedroom and the gun in a dresser drawer in another bedroom. A condition of the parolee's supervised release subjected him to searches of his person, his residence, or his vehicle at any time. The parolee sought to suppress the gun, arguing that he had a reasonable expectation of privacy in the apartment as an overnight guest and that the search was unlawful because he expressly consented only to searches of his person, his residence, and his vehicle. The court held that the parolee was entitled to no greater Fourth Amendment protections in his girlfriend's apartment than he would have received or could assert with respect to his own home. *Id.*, 482 F.3d at 318. Because the search was based upon reasonable suspicion that the parolee was involved in criminal activity and, pursuant to *Knights*, would have been lawful if it had occurred in his home, the court held that the defendant's Fourth Amendment rights had not been violated. *Id.*, 482 F.3d at 319. *See also United States v. Lopez*, 474 F.3d 1208, 1214 (9th Cir. 2006) (search of residence where parolee was living after absconding supervision was reasonable, pursuant to *Samson*, because search condition subjected parolee to suspicionless searches of himself or his residence).

Like the parole condition in *Samson*, Cruz's parole condition significantly diminished his reasonable expectation of privacy because it subjected him to searches of person or property, including residence and vehicle, *at any time and place* and did not expressly require reasonable suspicion or reasonable grounds. In contrast, the state has a substantial interest in monitoring and enforcing limitations on the behavior of probationers and parolees. *See Samson*, ___ U.S. at ___, 126 S. Ct. at 2200. The search was conducted by a parole officer, acting with police officers, and therefore did not exceed the scope of the search condition, which expressly authorized searches by any agent of Field and Community Services. Nothing precludes law enforcement officials' cooperation with a parole officer's request to assist in a parole search. *State v. Vega*, 110 Idaho 685, 688, 718 P.2d 598, 601 (Ct. App. 1986). Moreover, the record does not indicate that the officers conducted the search with the intent to harass Cruz or to use Cruz's suspected presence solely as a pretext to search Cruz's girlfriend, her son, or their apartment. *See State v. Misner*, 135 Idaho 277, 281, 16 P.3d 953, 957 (Ct. App. 2000). The officers were prompted to conduct the search by a tip that Cruz was selling narcotics and living at the apartment, as well as information that Cruz had recently stated that he wished to move from his reported address and was not at his reported address during a recent home visit. The

6

officers also observed Cruz's vehicle parked in front of the apartment the evening before and the evening of the search. The parole search was therefore based upon a reasonable suspicion or reasonable grounds that Cruz was violating the terms of his parole by living at the apartment and possessing or selling narcotics there. If Cruz's parole officer were required to obtain a warrant to conduct a search of a residence other than Cruz's reported residence, Cruz would be able to evade close supervision by spending much of his time and conducting illegal or prohibited activities at a residence he had not reported as his own. Allowing Cruz and other parolees to play this shell game with parole officers would defeat the state's substantial interest in closely monitoring parolees.

We hold that Cruz was entitled to no greater Fourth Amendment protections as a houseguest in his girlfriend's apartment than he would have received in his own home. *See Taylor*, 482 F.3d at 318. Because a search supported by a reasonable suspicion of possible parole violations would have been upheld had it occurred at Cruz's own residence, Cruz cannot obtain suppression of the items seized in his girlfriend's apartment.[2] In sum, Cruz's Fourth Amendment rights were not violated because the government's substantial interest in supervising parolees outweighs Cruz's significantly diminished expectation of privacy in his girlfriend's apartment.[3]

---

[2] It is arguable that even this reasonable suspicion requirement has been eliminated after the *Samson* decision. We need not consider this possibility in Cruz's case, however, because the parole officer had reasonable suspicion prior to the entry and search. *See Taylor*, 482 F.3d at 319 n.2.

[3] In so holding, we do not address the question of whether the warrantless search may have violated the Fourth Amendment rights of Cruz's girlfriend and her son. *See Taylor*, 482 F.3d at 319. (However, the state *conceded* at oral argument on appeal that any evidence found in the apartment would most likely be suppressible as to them had the state sought to prosecute.) Because neither Cruz's girlfriend nor her son were charged, it is constitutionally irrelevant for purposes of our opinion whether Cruz possessed authority to consent to a search of the apartment. *See and compare State v. Barker*, 136 Idaho 728, 40 P.3d 86 (2002) (warrantless search of fanny pack in apartment where parolee resided with his girlfriend did not violate girlfriend's Fourth Amendment rights because officer had reasonable suspicion that parolee had joint control and thus authority to consent to the search) *with State v. Buhler*, 137 Idaho 685, 52 P.3d 329 (Ct. App. 2002) (warrantless search of third party's residence where parolee was allegedly staying for a couple of days violated third party's Fourth Amendment rights because parolee lacked actual or apparent authority to consent to the search pursuant to his parole agreement). But Cruz did not need authority from anyone else to waive his own Fourth Amendment rights.

Cruz also asserts that Article I, Section 17 of the Idaho Constitution should confer greater protections for parolees than the Fourth Amendment of the United States Constitution. Cruz correctly notes that Article I, Section 17 of the Idaho Constitution provides greater protections than the Fourth Amendment of the United States Constitution in certain circumstances. *See, e.g.* *State v. Guzman*, 122 Idaho 981, 987, 842 P.2d 660, 666 (1992); *State v. Thompson*, 114 Idaho 746, 749-51, 760 P.2d 1162, 1165-67 (1988). However, in these cases, the Idaho Supreme Court has provided greater protection to Idaho citizens based on the uniqueness of our state, our Constitution, and our long-standing jurisprudence. *See State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001). None of these factors support a divergence from the interpretation of the Fourth Amendment by the United States Supreme Court in this case. We therefore decline to adopt Cruz's interpretation of the Idaho Constitution.

## IV.

## CONCLUSION

The district court erred in granting Cruz's motion to suppress. Accordingly, we reverse the district court's order suppressing the methamphetamine evidence seized during the parole search and remand the case for further proceedings consistent with the holding in this case.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**