191 P.3d 240

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Robert ADAMS, Jr., Defendant–Appellant.**

No. 32876.

Court of Appeals of Idaho.

July 15, 2008.

Review Denied Aug. 28, 2008.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge.

John Robert Adams, Jr. appeals from his judgment of conviction for trafficking in a controlled substance. Specifically, he contends the district court erred in denying his motion to suppress evidence. We affirm.

## I.

## BACKGROUND

In an unrelated case, Adams was placed on probation for felony possession of a controlled substance. Pursuant to his probation supervision agreement, Adams waived his "constitutional right to be free from such searches." Specifically, Adams agreed and consented "to the search of my person, automobile, real property, and any other property at any time and at any place by any Agent of the Division of Community Corrections." While on probation, Adams delivered methamphetamine to a confidential informant of the Chubbuck Police Department. Officers reported this to Adams' probation officer. Two weeks later, the probation officer issued an agent's warrant for Adams' arrest, and participated in a search for Adams along with members of the Idaho State Police. The probation officer was at Adams' residence conducting surveillance when Adams, driving a white Cadillac, pulled up to the house. Adams' girlfriend, Kelsey Matkin, exited the vehicle and went into the house they shared. She returned to the Cadillac moments later and they left in the car. Other detectives followed the vehicle to a mobile home park. Adams drove the Cadillac into a cul-de-sac out of view of the officers. The Cadillac immediately returned towards the detectives, this time with Matkin driving and Adams in the passenger seat. The detectives stopped the Cadillac and ordered all of the occupants out of the car. The probation officer arrived on the scene of the stop and authorized a search of the Cadillac and of Adams' person.

The search of Adams produced $242, while the search of the Cadillac uncovered $2,910 in the center consol of the car and 50.8 grams of methamphetamine in a wooden box in the trunk. The probation officer had previously searched Adams' and Matkin's residence and

his truck on a tip that he was keeping drugs in a wooden box. She was unable to locate the box during that search. At the time of the stop, the detectives were aware that the Cadillac was registered to Matkin, although the probation officer may not have known this. Adams was charged with trafficking in methamphetamine, I.C. § 37-2732B(a)(4)(A), and was alleged to be a persistent violator pursuant to the Uniform Controlled Substances Act, I.C. § 37-2739. Adams moved to suppress the evidence found in Matkin's car as the fruit of an unlawful warrantless search. The district court denied the motion and a subsequent motion to reconsider, holding that the consent to searches in his supervision agreement constituted valid consent and extended to Matkin's car. Adams entered into an Idaho Criminal Rule 11 plea agreement, reserving the right to appeal from the district court's denial of his motion to suppress. Adams pled guilty to trafficking, and the persistent violator allegation was dismissed. Adams was sentenced to a term of confinement of eight years, with four years determinate, a fine of $10,000, court costs and restitution. This appeal followed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## DISCUSSION

Adams asserts that although he waived his Fourth Amendment rights re-

garding searches of his person, residence, and automobile, that waiver did not extend to Matkin's car. The state counters that because Adams was in control of the car just prior to the stop, he possessed it, justifying a search pursuant to his supervision agreement.[1]

■ A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement in the Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution. *State v. Cruz*, 144 Idaho 906, 908, 174 P.3d 876, 878 (Ct.App.2007); *see also State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993); *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App. 1993). Idaho appellate courts have long-recognized that parolees and probationers have a diminished expectation of privacy and will enforce Fourth Amendment waivers as a condition of parole or probation. *Cruz*, 144 Idaho at 908, 174 P.3d at 878; *see also State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *State v. Peters*, 130 Idaho 960, 963, 950 P.2d 1299, 1302 (Ct.App.1997). Even in the absence of a warrantless search condition, a parole or probation officer may conduct a search of a parolee or probationer and his or her vehicle if the officer has "reasonable grounds" to believe that he or she has violated a parole or probation condition and the search is reasonably related to the disclosure or confirmation of that violation. *See State v. Klingler*, 143 Idaho 494, 497–98, 148 P.3d 1240, 1243–44 (2006). In *Klingler*, the Idaho Supreme Court upheld the warrantless search of an unsupervised probationer's residence based upon an unsubstantiated tip from a police detective that Klingler "may be dealing drugs," coupled with the probationer's drug history which indicated a heightened need for supervision. *Id.* at 498, 148 P.3d at 1244. Thus, the mere likelihood of facts justifying the search can be sufficient to constitute reasonable grounds. *Id.; see also State v. Anderson*,

140 Idaho 484, 487–88, 95 P.3d 635, 638–39 (2004) (finding unconfirmed tips from a neighbor regarding detected odor of suspected methamphetamine lab, coupled with prior drug history and other rumors, sufficient to establish reasonable grounds for warrantless search as a condition of bail pending appeal).

■ The United States Supreme Court recently analyzed the constitutionality of warrantless searches of parolees and probationers under the general Fourth Amendment approach of examining the totality of the circumstances. *See Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250, 256 (2006); *United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497, 504 (2001). Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *Samson*, 547 U.S. at 848, 126 S.Ct. at 2197, 165 L.Ed.2d at 256; *Knights*, 534 U.S. at 118–19, 122 S.Ct. at 590–91, 151 L.Ed.2d at 504–05. In *Knights*, the Court held that, when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. *Knights*, 534 U.S. at 121, 122 S.Ct. at 592, 151 L.Ed.2d at 506.

This Court considered a parolee's waiver of his Fourth Amendment rights in a supervision agreement as it pertained to his residence. *Cruz*, 144 Idaho at 907, 174 P.3d at 877. Law enforcement officers accompanied Cruz's parole officer to Cruz's girlfriend's residence, where they conducted a search based on reasonable suspicion that he was selling drugs from the apartment. *Id.* Cruz's supervision agreement stated that he would "submit to a search of person or property, to include residence and vehicle, at any time and place by any agent of Field and Commu-

---

1. The state also contests Adams' legitimate expectation of privacy in Matkin's car in order to object to the search. By denying ownership of the car, the state posits that Adams is also denying any expectation of privacy in the car. Although lack of ownership is a significant factor, it does not, standing alone, establish the lack of a privacy interest. *State v. Hanson*, 142 Idaho 711, 719, 132 P.3d 468, 476 (Ct.App.2006).

nity Services and [he] does waive [the] constitutional right to be free from such searches." *Id.* We held that Cruz's status as a parolee created a diminished expectation of privacy in his residence. *Id.* at 910, 174 P.3d at 880. Although Cruz denied living with his girlfriend, his car was observed at the apartment several nights in a row, he had clothes in the apartment and containers of prescription medicine in the master bedroom. *Id.* at 907, 174 P.3d at 877. Cruz had not been present at his approved residence on the last home-visit by his parole officer, and his car had not been seen there in more than two weeks. *Id.* Determining that Cruz's diminished expectation of privacy was no greater in his girlfriend's apartment than in his own, this Court upheld the warrantless search of the apartment. *Id.* at 910, 174 P.3d at 880.

Similarly, in *State v. Smith,* 589 N.W.2d 546, 551 (N.D.1999), the Supreme Court of North Dakota upheld the warrantless search of a car that was not registered to the probationer. Despite the fact that the car was registered to Smith's father, it was listed as his car in his probation officer's file, he was observed driving the car on several occasions, and he had received multiple traffic infractions as the driver of that car. *Id.* Smith's supervision agreement included an acknowledgement that he would submit to a search of his person, his vehicle, or his residence, by any probation officer, at any time, with or without a warrant. *Id.* at 547. Based on a reasonable suspicion of drug activity, Smith's probation officer and several law enforcement officers searched Smith's residence and vehicles, including the car registered to his father. *Id.* The Court upheld the validity of the search because the words "your vehicle" in the supervision agreement included the car regularly driven by the probationer, whether registered to him or not. *Id.* at 551.

As with the supervision condition in *Cruz,* Adams' probation condition significantly diminished his reasonable expectation of privacy because it subjected him to searches of person or property, including residence and

vehicle, *at any time and place* and did not expressly require reasonable suspicion or reasonable grounds. On the other side of the scale, the state has a substantial interest in monitoring and enforcing limitations on the behavior of probationers and parolees. *See Samson,* 547 U.S. at 853, 126 S.Ct. at 2200, 165 L.Ed.2d at 260. The search at issue here was initiated based upon a reasonable suspicion or reasonable grounds that Adams was violating the terms of his probation by possessing and selling narcotics. Adams was first spotted driving the Cadillac. Adams and Matkin, however, changed positions after detectives had followed them for approximately ten minutes, and did so in apparent awareness that they were about to be stopped. But for the quick switch of driver and passenger, Adams was freely using the Cadillac as though it was his. If Adams' probation officer were required to obtain a warrant to conduct a search of any vehicle other than Adams' registered vehicle, Adams would be able to evade close supervision by only driving someone else's car when engaged in elicit activity or registering a car in someone else's name for that purpose. Allowing Adams and other probationers to play this shell game with probation officers would defeat the state's substantial interest in closely monitoring probationers. *See Cruz,* 144 Idaho at 910, 174 P.3d at 880. We hold that Adams was entitled to no greater Fourth Amendment protections in his girlfriend's vehicle than he would have received in his own car. Because a search supported by a reasonable suspicion of possible probation violations would have been upheld had it occurred in Adams' own vehicle, Adams cannot obtain suppression of the items seized in his girlfriend's vehicle. *See id.* at 910, 174 P.3d at 880. In sum, Adams' Fourth Amendment rights were not violated because the government's substantial interest in supervising probationers outweighs Adams' significantly diminished expectation of privacy in his girlfriend's vehicle.[2]

The district court did not err by denying Adams' motion to suppress.

---

**2.** Our opinion should not be misinterpreted to mean that Adams' consent to a search of his girlfriend's car was binding on her or that the

search was constitutionally permissible as to her. We are here addressing only the constitutional rights of Adams, not those of his girlfriend.

## IV.

## CONCLUSION

The district court properly denied Adams' motion to suppress evidence seized from Matkin's car and the motion to reconsider. Adams' expectation of privacy was significantly diminished by his status as a probationer and the Fourth Amendment waiver in his supervision agreement. The judgment of conviction is affirmed.

Judge LANSING and Judge PERRY concur.

