**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 33950**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2009 Opinion No. 36** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: May 14, 2009** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **WILLIAM TROY HEDGECOCK,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. R. Barry Wood, District Judge.

Judgment of conviction for possession of forged bank bills, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant. Elizabeth A. Allred argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

GUTIERREZ, Judge

William Troy Hedgecock appeals from his judgment of conviction entered upon his conditional guilty plea to possession of forged bank bills. Specifically, he contests the court's denial of his motion to suppress evidence, the denial of his Idaho Criminal Rule 35 motion for reduction of sentence, and the length of the sentence imposed. We affirm.

**I.**

**FACTS AND PROCEDURE**

In June 2005, Hedgecock was placed on probation for five years after pleading guilty to possession of methamphetamine and attempted forgery. He signed a document containing the conditions of his probation, including the following relevant sections:

10. **Submit to Searches:** The defendant shall submit to a search of his/her person, residence or vehicle at the request of any Probation Officer or a police officer.
. . . .

1

1.  **LAWS AND COOPERATION:** I shall respect and obey all laws and comply with any lawful request of my supervising officer, any agent of the Division of Community Corrections, or any police officer.

. . . .

6.  **SEARCH:** I agree and consent to the search of my person, automobile, real property, and any other property *at any time at any place* by any Agent of the Division of Community Corrections or any police officer and waive my constitutional right to be free from searches.

(Emphasis added).

In November 2005, Hedgecock's probation officer, Officer Neumeyer, arrived at Hedgecock's apartment to "see what was going on with the house." Hedgecock was not at home, but his roommate allowed the officers to enter. While inside, Officer Neumeyer found some items of "concern" including a scanner used to scan pictures and documents and inside the scanner, a piece of manila file folder cut in the size and shape of a dollar bill. The officer also found illegal drugs on the person with whom Hedgecock was residing.

At some point in the search, Officer Waugh, a Wendell police officer, arrived to assist Officer Neumeyer. The two were standing on the balcony of the apartment when they saw a vehicle pull up to a stop sign about fifty yards away. Officer Waugh indicated it was the same vehicle he had stopped more than a week prior and found Hedgecock inside. The vehicle paused briefly, the occupants looked toward the officers, and then it accelerated quickly away from the stop sign. Officer Neumeyer directed two county police officers to stop the vehicle to determine if Hedgecock was inside, "check the vehicle" and "detain" Hedgecock until Neumeyer arrived on the scene. Officer Neumeyer testified at the suppression hearing that he had wanted Hedgecock detained to question him about the scanner and to inform him the officers had found illegal drugs on his roommate's person, making it inappropriate for Hedgecock to continue living there.

The officers instigated the stop solely on the grounds that Officer Neumeyer had requested it and then notified Neumeyer that Hedgecock was, in fact, a passenger in the vehicle. Before Officer Neumeyer arrived at the scene of the stop, Deputy Jeromy Smith, one of the officers who stopped the vehicle, conducted a search of the passenger seat area where Hedgecock had been sitting. The search revealed what Deputy Smith believed to be counterfeit one-hundred-dollar bills.

2

After being read his *Miranda*[1] rights, Hedgecock admitted that the bills were counterfeited from a one-hundred-dollar bill that he had in his wallet. Officer Neumeyer, who arrived about five minutes after Hedgecock was first detained, testified that Hedgecock also admitted that he had been using methamphetamine and that he was intending to use the counterfeit bills to buy and sell drugs in a money laundering scheme. After the genuine bill was found in Hedgecock's wallet, he was arrested.

Hedgecock was charged with possession of forged bank bills, Idaho Code § 18-3605. He filed a motion to suppress, claiming the seizure of the vehicle was unreasonable and thus, the subsequent search was unlawful and the evidence recovered and his statements made should be suppressed. The court denied the motion, and Hedgecock subsequently entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. The court entered judgment and imposed a unified sentence of fourteen years, with seven years determinate. Hedgecock filed an Idaho Criminal Rule 35 motion for reduction of sentence, which the district court denied. He now appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

Hedgecock argues that discovery of the forged bank bills should be suppressed because his Fourth Amendment right to be free from unreasonable seizures was violated when officers illegally detained him without the requisite reasonable articulable suspicion--of criminal activity or that Hedgecock was in the vehicle--to make the stop. He also contends that he did not waive his right to be free from unreasonable seizure as a condition of his probation. The state counters that Hedgecock's Fourth Amendment probation waiver includes a waiver of his constitutional rights to be free from searches and seizures. Alternatively, the state argues that even assuming for the sake of argument, Hedgecock only waived his right to be free from searches, not seizures, the district court correctly concluded there was reasonable articulable suspicion justifying Hedgecock's seizure.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

When reviewing the decision on a suppression motion, we defer to the trial court's findings of fact unless they are clearly erroneous, while exercising free review over the application of constitutional standards to those facts. *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007); *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct. App. 1998). Deference is also given to the trial court's decisions regarding the credibility of witnesses, the weight to be given to conflicting evidence and the factual inferences to be drawn. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995).

The Fourth Amendment to the United States Constitution prohibits government agents from conducting unreasonable searches and seizures. When a private vehicle is stopped by the police, all of its occupants are "seized" and may seek suppression of evidence if the seizure did not comply with Fourth Amendment standards. *Brendlin v. California*, 551 U.S. 249 (2007); *State v. Nevarez et. al.*, ___ Idaho ___, ___ P.3d ___ (Ct. App. 2009); *State v. Luna*, 126 Idaho 235, 880 P.2d 265 (Ct. App. 1994). Normally, to pass constitutional muster, a detention to investigate possible criminal activity must be based upon reasonable suspicion, derived from specific articulable facts, and the rational inferences that can be drawn from those facts, that the person stopped has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Bishop*, 146 Idaho 804, 203 P.3d 1203 (2009); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003); *State v. Salato*, 137 Idaho 260, 264, 47 P.3d 763, 767 (Ct. App. 2001). The quantity and quality of information necessary to create reasonable suspicion for such a "*Terry* stop" is less than that necessary to establish probable cause, *Alabama v. White*, 496 U.S. 325, 330 (1990); *Bishop*, 146 Idaho at 811, 203 P.3d at 1210, but must be more than a mere hunch or unparticularized suspicion. *Terry*, 392 U.S. at 27.

When a defendant challenges the validity of a vehicle stop, the burden is on the state to prove that the stop was justified. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *State v. Sevy*, 129 Idaho 613, 614-15, 930 P.2d 1358, 1359-60 (Ct. App. 1997). The reasonableness of a stop is determined by looking at the totality of the circumstances confronting the officer at the time of the stop. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Osborne*, 121 Idaho 520, 526, 826 P.2d 481, 487 (Ct. App. 1991). Due weight must be given to the reasonable inferences that a law enforcement officer is entitled to draw from the facts in light of his experience. *Terry*, 392 U.S. at 27.

4

Hedgecock first contends the officers did not possess reasonable, articulable suspicion to stop the vehicle because they had only a "hunch" that he was even inside the vehicle. Here, Officer Neumeyer knew that Hedgecock was under supervision stemming from his convictions for drug possession and attempted forgery and had found incriminating evidence in both regards after searching his residence and speaking with his roommate. Thus, Officer Neumeyer had reasonable suspicion that Hedgecock was still engaged in criminal activity--a fact that became more significant when the officers watched a vehicle in which Hedgecock had been a passenger more than a week earlier, pull to the stop sign approximately fifty yards from the residence. The officers observed the vehicle occupants look up toward the officers and then accelerate away from the scene at a high rate of speed. Thus, while at the time of the stop, the officers had not yet definitively determined that Hedgecock was a passenger, they did have reasonable suspicion, given the totality of the circumstances, that he was inside. Under Fourth Amendment strictures, the officers lawfully detained the vehicle in which Hedgecock was a passenger.

Furthermore, Idaho appellate courts have long recognized that parolees and probationers have a diminished expectation of privacy and will enforce Fourth Amendment waivers as a condition of parole or probation. *State v. Cruz*, 144 Idaho 906, 908-09, 174 P.3d 876, 878-79 (Ct. App. 2007). Most recently, in *State v. Purdum*, ___ Idaho ___, ___ P.3d ___ (2009), the Idaho Supreme Court approved this Court's holding that a probationer's waiver requiring him to submit to "random" blood, breath, and/or urine analysis upon the request of law enforcement personnel, encompassed a waiver of his right to be free of suspicionless seizures. In that case, during Purdum's probationary period for possession of methamphetamine, a patrolling police officer, familiar with the conditions of Purdum's probation, witnessed Purdum driving a vehicle and decided to stop him--without any suspicion of wrongdoing--and ask that he submit to a random drug test. Purdum initially fled on foot and when the officer eventually apprehended him, he searched Purdum's person and his vehicle, discovering drugs and associated paraphernalia. The trial court denied Purdum's motion to suppress wherein he alleged the officer did not have the authority to detain him.

Initially, in denying Purdum's argument on appeal, the Supreme Court noted that both it and this Court have previously held that similar language in a probationer's waiver constituted valid, express consent to suspicionless, warrantless searches. *See State v. Gawron*, 112 Idaho 841, 736 P.2d 1295 (1987) (validating a search conducted without reasonable suspicion where a

5

condition of the defendant's probation was consent to search his person or any property "at any time and at any place by any law enforcement officer"); *State v. Pecor*, 132 Idaho 359, 364, 972 P.2d 737, 742 (Ct. App. 1998) (citing *Gawron* for the proposition that reasonable suspicion is not required for searches pursuant to terms of probation). The Court concluded its analysis, addressing Purdum's claim that his consent to submit to random evidentiary testing did not mean that he consented to a seizure for such testing, by citing to this Court's treatment of the issue where we stated:

> While the Idaho Supreme Court has said that conditions of probation, especially a waiver of a Fourth Amendment right, cannot be implied . . . an officer must be able to temporarily detain a probationer in order to effectuate this search condition. Any other reading would render the provision a nullity.

*State v. Purdum,* ___ Idaho at ___, ___ P.3d at ___ (quoting *State v. Purdum*, 2008 WL 183377 at *4 (Idaho Ct. App. 2008) (citations and footnote omitted). Thus, the Court concluded that Purdum consented to submit to random evidentiary testing and, therefore, impliedly consented to a limited seizure of his person necessary to effectuate such searches. *Id.*

Hedgecock attempts to distinguish his situation from *Purdum*, arguing that in that case, the officer testified that he had decided to stop the defendant for the purpose of asking him to submit to a drug test in compliance with his probationary conditions, but in this case "no such connection between the actions of the officers and the seizure of Mr. Hedgecock can be drawn." We interpret this as a reference to the officers' subjective intent in effectuating the seizure, with Hedgecock arguing that the law enforcement official making (or directing the making of) the stop must state that "they desired to detain Mr. Hedgecock to effectuate a search of his person, residence, or vehicle" before the seizure could be considered valid under the terms of the probation agreement. Officer Neumeyer testified that he ordered the vehicle in which Hedgecock was riding to be stopped and "checked" and for Hedgecock to be detained until Neumeyer's arrival. This was done immediately after the officer had found in Hedgecock's residence "items of concern" that were suspected to have been used in criminal activity. Thus, it is implicit in the officer's testimony that his intention at the time of the stop was to search Hedgecock and the vehicle for evidence of suspected criminal activity, based on the items found in his residence. As a result, Hedgecock's attempt to distinguish *Purdum* on this basis is unavailing. We conclude, therefore, that the district court did not err in denying Hedgecock's motion to suppress.

6

**B.     Sentence Review**

Hedgecock also contends that given any view of the facts, his unified sentence of fourteen years, with seven years determinate, is excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 170 P.3d 387 (2007).

Admitting that the sentence is within the statutory maximum (fourteen years imprisonment), Hedgecock argues that, nonetheless, his sentence was an abuse of discretion because the district court failed to properly consider the mitigating factors present in his case. He asserts that the court failed to give proper consideration to the fact that he had admitted to a substance abuse problem and had stated his desire for treatment. He also contends the court failed to take into account his mental illness, the continued support of his family, his expressed remorse over the offense at issue, and his "good behavior" and "progress" during his incarceration.

When sentenced in this case, Hedgecock was twenty-nine years old and had a lengthy record, including three prior felony convictions[2] and a past history of gang involvement and supporting himself by selling drugs. He also had juvenile adjudications for fraudulent use of a financial transaction card, possession of a controlled substance, escape, and aiding and abetting

---

[2]     The state specifically agreed not to pursue a persistent violator charge against Hedgecock which would have made life imprisonment the statutory maximum sentence in this case.

burglary. The evidence established that he had been given several previous opportunities for treatment, probation, and retained jurisdictions, all which proved unsuccessful in preventing his recidivism.

The record also shows that in determining the appropriate sentence, the district court specifically articulated the four objectives of sentencing it would consider and noted that it had read the three letters submitted on Hedgecock's behalf and the letter written by Hedgecock himself. The court then proceeded to consider the fact that Hedgecock suffered from a substance abuse problem and that he had had several failed attempts at rehabilitation--including unsuccessful stints in a rehabilitation center, on a rider, on several terms of probation, and on a term of parole. The court emphasized Hedgecock's prior criminal history, as well as the fact that he had received three disciplinary offense reports while awaiting sentencing in the instant case and numerous other disciplinary offense reports while in prison on other charges. The court opined that the chance Hedgecock would reoffend was "essentially 100 percent based upon past conduct, based upon [his] personality, and based upon the drug addiction." It also considered Hedgecock's mental health history, noting that he had been diagnosed with "adult antisocial behavior." Based on his history and the fact that he is a "multiple offender," the court concluded that Hedgecock "just . . . can't follow the rules"--whether incarcerated or not--and that the court's need to protect society justified the sentence imposed.

A review of the record on appeal convinces us that the court took the proper factors into consideration, including the mitigating factors which Hedgecock points to, when coming to a conclusion regarding the sentence to impose. In light of the nature of the offense, Hedgecock's prior history of criminal behavior and drug use and his demonstrated inability to be rehabilitated and succeed on probation, we conclude that he fails to establish that the sentence imposed was an abuse of the district court's considerable discretion in this area.

## C.     Rule 35 Motion

Hedgecock also argues that the district court erred in denying his Rule 35 motion for reduction of sentence. Initially, we note that an order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established. *See State v. Hernandez*, 121 Idaho 114, 822 P.2d 1011 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct. App. 1984); *Toohill*, 103 Idaho 565, 650 P.2d 707.

If a sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez*, 121 Idaho at 117, 822 P.2d at 1014. On appeal, Hedgecock points to additional information supplied to the district court in the form of a letter from the mother of Hedgecock's son. The letter referred to the recent "bond" formed between Hedgecock and his son and the mother's belief that "with [Hedgecock's son's] supportiveness and the truth how it is [sic] will help in [Hedgecock's] rehabilitation." It also expressed that "[Hedgecock] and [his son] need each other. Together with the help of whoever is willing to help (so many people contribute to recovery for addicts) we can help him."

As the state points out, the crux of the letter was making the court aware of the relationship between Hedgecock and his son--a fact of which the court was cognizant at the time of sentencing. Hedgecock's counsel specifically noted that Hedgecock's son's mother was no longer seeking termination of Hedgecock's parental rights and that his "son is an important part of his life." In denying Hedgecock's Rule 35 motion, the court stated that "[t]he defendant has not presented, in conjunction with this motion, any evidence that was not considered by the Court at the time of the sentencing hearing." We agree and affirm the court's denial of Hedgecock's motion for reduction of sentence.

### III.

### CONCLUSION

The district court did not err in denying Hedgecock's motion to dismiss, nor did it err in denying his Rule 35 motion for reduction of sentence. Hedgecock has also failed to show that the sentence imposed was an abuse of discretion.

Chief Judge LANSING **CONCURS.**

Judge Pro Tem SCHWARTZMAN **SPECIALLY CONCURS.**

I concur in the opinion of this Court, taking note that the entire operation was under the direction of defendant's probation officer, from the entering and search of Hedgecock's apartment to the request to law enforcement to stop and check the vehicle and detain Hedgecock until he arrived. A probation officer can certainly request the assistance of law enforcement to assist in a probation search and seizure. *See State v. Cruz*, 144 Idaho 906, 910, 174 P.3d 876, 880 (Ct. App. 2007); *State v. Vega*, 110 Idaho 685, 688, 718 P.2d 598, 601 (Ct. App. 1986).

9

I write separately, however, as I did in *Purdum* 1, 2008 WL 183377 (Idaho Ct. App. 2008) to again note that Hedgecock's terms of probation carry the potential of transforming every police officer in the State of Idaho into a *de facto* probation/parole officer. This raises troubling complications about the permissible scope of a suspicionless detention and/or search when conducted, not by a probation officer involved in an ongoing supervisory relationship making home visits or seeking to interview a subject, but by a police officer/detective in the field who randomly encounters a probationer going about his daily business or otherwise decides to pay a nocturnal "courtesy call" at his/her residence.

The standardized boilerplate language of Hedgecock's probationary "consent/waiver" literally permits such searches and seizures, without probable cause, or even suspicion, of the probationer's person, vehicle or home at any time and place, day or night, by any police officer. The potential for arbitrary, capricious or harassing enforcement is self-evident. *See* dissent of Justice Bistline in *State v. Gawron*, 112 Idaho 841, 844-847, 736 P.2d 1295, 1298-1301 (1987) and cases cited therein; *see also Roman v. State*, 570 P.2d 1235, 1243 (Alaska 1977) and *Reichel v. State*, 101 P.3d 197, 202 (Alaska Ct. App. 2004) ("except when acting at the direction of a parole officer," general condition of probation giving police officers independent authority to require a probationer to submit to a search violates Alaska Constitution).

Just how far this type of probationary term can be stretched, because of the subject's diminished expectation of privacy, remains to be seen. *See Samson v. California*, 547 U.S. 843, 850-856 (2006) (while upholding suspicionless search of parolee on a public street conducted by a police officer, Supreme Court disavowed the proposition that parolees, like prisoners, have no Fourth Amendment rights, and recognized California's prohibition against "arbitrary, capricious or harassing" parole searches); *compare State v. Purdum*, ___ Idaho, ___, ___ P.3d ___ ___ (2009) ("While the United States Supreme Court has not yet addressed whether a probationer may waive his Fourth Amendment rights through acceptance of probationary search conditions (fn.1), this Court has determined that a probationer's consent to searches constitutes a waiver of Fourth Amendment rights.") (citing *State v. Gawron*, 112 Idaho 841, 736 P.2d 1295 (1987). Footnote one of *Purdum* cites to *United States v. Knights*, 534 U.S. 112, 118 (2001) and *Samson*, 547 U.S. at 852 n.3, both of which refer to *consent* in the *Schneckloth* [*v. Bustamonte*, 412 U.S. 218 (1973)] sense of a complete waiver of Fourth Amendment rights. This leaves for possible

10

future consideration such issues as *voluntariness*, *understanding*, *revocability*, and *serving the legitimate ends of probation* which I only mention in passing.

I suspect that the appellate courts of Idaho have not seen the last of this term of probation.