57 P.3d 771

STATE of Idaho, Plaintiff–Appellant,

v.

Kenneth Floyd FULLER, Defendant–Respondent.

No. 28553.

Supreme Court of Idaho, Coeur d'Alene, October 2002 Term.

Oct. 23, 2002.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for appellant. Karen A. Hudelson argued.

Frederick G. Loats, Coeur d'Alene, for respondent.

EISMANN, Justice.

This is an appeal from an order of the district court suppressing evidence obtained from a parolee. We reverse the order of the district court and remand this case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The respondent Kenneth Fuller was convicted of a felony in Oregon and later paroled. He transferred to the state of Idaho pursuant to the Out–of–State Parolee Supervision Act, Idaho Code §§ 20–301 & 20–302 (1997), and the Idaho Department of Correction (Department) accepted supervision of him on March 10, 1998. Fuller entered into a parole supervision agreement with the Department that included the provision, "I agree and consent to the search of my person, automobile, real property, and any other property at any time and at any place by any agent of the Division of Field and Community Services. I waive my constitutional right to be free from such searches." Another provision of the supervision agreement provided, "I shall not use or possess any controlled substances unless lawfully prescribed by a licensed physician. I agree to submit to tests for controlled substances or alcohol on my own expense as requested by my supervising officer or any agent of the Division of Field and Community Services."

Fuller's parole officer was Probation/Parole Officer Kathy Marler. She submitted a report to the state of Oregon in which she stated that Fuller had violated the conditions of his parole and requested that he be arrested and his parole revoked. On February 22, 1999, the State of Oregon, Board of Parole/Post–Prison Supervision issued an order that provided, "The Board of Parole and Post–Prison Supervision hereby suspends the supervision of the above named person who was released on supervision on 02/05/1991. You are hereby authorized and directed to take custody and have this person detained until further order of the board." The next day, Oregon officials informed Marler by telephone that they had received a parole commission warrant for Fuller's arrest, but they stated it could only be served in Oregon.

On February 24, 1999, Fuller came to Officer Marler's office for a regularly-scheduled appointment. During that meeting, Officer Marler asked Fuller for a urine sample to test for controlled substances. Officer Bob Anderson, who supervised the taking and in-office testing of the urine sample, and Officer Michael Moser, who was present when the urine sample was tested, assisted Officer Marler. Fuller's urine sample tested positive for methamphetamine. He was also present when his urine sample was tested.

Officer Moser then confronted Fuller about the positive urine sample, and Fuller eventually admitted to using methamphetamine within the last couple days. Officer Moser asked Fuller if he had any drugs in his vehicle, and Fuller stated that he did not. Officer Moser then instructed Fuller to wait in the front lobby of the probation and parole office and stated that he was going to search Fuller's vehicle. Officer Moser also notified Officer Marler of his suspicion that Fuller had drugs in his vehicle. She requested that Officer Moser call the Kootenai County Drug Task Force for assistance, and he did so. Officer Eric Hildebrandt of the Task Force agreed to assist in the search.

Officer Moser then took Fuller into an office and handcuffed him. Fuller immediately asked to use the restroom. As Officer Moser was escorting Fuller to the restroom, Fuller stated, "It's under the front seat." Officer Moser asked what Fuller was talking about, and Fuller stated that he had methamphetamine under the front seat of his vehicle.

When Officer Hildebrandt arrived, he and Officers Marler and Anderson searched Fuller's vehicle. They found approximately three grams of methamphetamine and drug paraphernalia under the front seat. During the period between the urine test and the search, Officer Marler was in another room having several telephone conversations with Oregon authorities. At some point she learned that an extraditable Oregon warrant had been entered in the National Crime Information Center computer and that Fuller could be arrested based upon that warrant.

On May 7, 1999, the State charged Fuller with the felony of possession of methamphetamine with the intent to deliver. After a preliminary hearing, the presiding magistrate judge found that there was probable cause to believe that Fuller had committed the felony of possession of methamphetamine, but not that he did so with the intent to deliver. He bound Fuller over on the possession charge, and on June 16, 1999, the State filed an information charging Fuller with the felony crime of possession of methamphetamine.

Fuller filed motions to suppress the oral statements he made at the probation and parole office and the evidence obtained during the search of his vehicle. After a hearing, the district judge granted both motions. The district judge reasoned that the order suspending Fuller's probation that was issued by the Oregon Board of Parole and Post–Prison Supervision was tantamount to an arrest warrant; that under Idaho Code § 20–228,[1] which the court presumed to be consistent with Oregon law, the issuance of the arrest warrant suspended Fuller's parole and transformed him into a fugitive from justice; and that the Idaho probation and parole officers therefore no longer had authority to supervise Fuller or to ask him to submit to urinalysis. The district court concluded that the request that Fuller submit a urine specimen for urinalysis violated his Fourth Amendment rights, and that the evidence obtained as a result of that request—his oral statements, and the evidence obtained from his vehicle—must be suppressed.

The State appealed, and the Idaho Court of Appeals initially heard the appeal. The Court of Appeals affirmed, holding that Fuller waived his right to be free from unreason-

---

1. The statute provides as follows:

The commission for pardons and parole, in releasing a person on parole, shall specify in writing the conditions of parole, and a copy of such conditions shall be given to the person paroled. Whenever the commission finds that a parolee may have violated the conditions of parole, the written order of the commission, signed by a member or members of the commission or the executive director, shall be sufficient warrant for any law enforcement officer to take into custody such person, and it is hereby made the duty of all sheriffs, police, constables, parole and probation officers, prison officials and other peace officers, to execute such order. Such warrant shall serve to sus-

pend the person's parole until a determination on the merits of the allegations of the violation has been made pursuant to a revocation hearing. From and after the issuance of the warrant and suspension of the parole of any convicted person and until arrest, the parolee shall be considered a fugitive from justice. Such person so recommitted must serve out the sentence, and the time during which such prisoner was out on parole shall not be deemed a part thereof; unless the commission, in its discretion, shall determine otherwise, but nothing herein contained shall prevent the commission from again paroling such prisoners at its discretion.

able searches and seizures as a condition of his parole, that the warrant issued by Oregon suspended Fuller's parole and made him a fugitive from justice, that Fuller's prior waiver of his rights was therefore no longer effective, and that as a result Officer Marler had no legal authority to ask Fuller to submit to a urinalysis. The Court of Appeals affirmed the district court's holding that Fuller's oral statements and the items found during the search of his vehicle were "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and therefore inadmissible. The State then filed a petition for review, which we granted.

## II. ANALYSIS

■ In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court. *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002). When reviewing a trial court's ruling on a motion to suppress, this Court will not disturb the trial court's findings of fact if they are based upon substantial and competent, even though conflicting, evidence, but we freely review the application of the law to those factual findings. *State v. Elison*, 135 Idaho 546, 21 P.3d 483 (2001).

■ The trial court based its decision upon Idaho Code § 20–228, which provides, "From and after the issuance of the warrant and suspension of the parole of any convicted person and until arrest, the parolee shall be considered a fugitive from justice." Oregon has a similar statute. OR. REV. STAT. § 144.331. Neither statute controls the resolution of the motions to suppress in this case, however.

■ Once Fuller transferred to Idaho, he was under the supervision of Idaho authorities and was no longer under the supervision of Oregon authorities. *Pritchard v. State*, 115 Idaho 111, 765 P.2d 136 (1988). In order to be on parole in Idaho, Fuller signed a parole supervision agreement with the Department. That agreement included a waiver of Fuller's Fourth Amendment Rights and an agreement to submit to tests for controlled substances. The provisions of the parole supervision agreement continued in force as long as Fuller was under the Department's supervision. The Department's duty to supervise Fuller was governed by Idaho Code § 20–219, which provides, "The state board of correction shall be charged with the duty of supervising ... all persons convicted of a felony released on parole or probation from other states and residing in the state of Idaho." A parolee is "released" when he is allowed to be out of confinement. See *Walton v. State*, 112 Idaho 503, 733 P.2d 724 (1987); *State v. Gee*, 107 Idaho 991, 994, 695 P.2d 376, 379 (1985); IDAHO CODE § 20–223 (1997). As long as Fuller was released, the Department had the duty of supervising him, and the parole supervision agreement he signed was still in effect. Even though on February 22, 1999, the Oregon authorities suspended Fuller's parole and he was legally a fugitive from justice, he was still released. He was not yet in custody. The order suspending Fuller's parole only authorized the authorities to take him into custody pursuant to the authority of the Oregon order. He remained released, however, until he was actually taken into custody under the authority of that order. Thus, when Fuller arrived at the probation and parole office on February 24, 1999, he was still under the Department's supervision, and, pursuant to the parole supervision agreement, the Idaho probation and parole officers had authority to demand that Fuller produce a urine sample for analysis and to search his vehicle.

Because the probation and parole officers had authority to search Fuller's vehicle under the terms of the parole supervision agreement, we reverse the order of the district court suppressing from evidence the items found during that search and we vacate the district court's order suppressing Fuller's oral statements on the ground that they were the fruit of the allegedly unlawful request that Fuller submit to urinalysis. Fuller also sought to suppress those statements on the ground that they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because of its ruling regarding the urinalysis, the district court did not address the *Miranda* issue, and we express no opinion regarding

**64**

it. That issue will have to be resolved on remand.

### III. CONCLUSION

We reverse the district court's order suppressing from evidence the items recovered during the search of Fuller's vehicle. We vacate the order suppressing from evidence Fuller's oral statements, and we remand this case for further proceedings consistent with this decision.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.