**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39226**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Opinion No. 51** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: September 19, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **MARK LEE ELLIS,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant. Shawn F. Wilkerson argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Shafer argued.

---

GRATTON, Judge

Mark Lee Ellis appeals from his judgment of conviction, entered following his conditional plea of guilty to two counts of possession of sexually exploitative material, Idaho Code § 18-1507A. Specifically, Ellis challenges the district court's order denying his motion to suppress evidence. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Ellis was released on parole in an unrelated matter. Although Ellis's parole agreement is not included in the record, it appears that the agreement included a condition wherein Ellis waived his Fourth Amendment right to be free from unreasonable searches. On March 17, 2010, Ellis was arrested on an agent's warrant for a parole violation. Approximately one week later, while Ellis was still incarcerated, an Idaho State Parole Commission Warrant (commission warrant) was issued and Ellis was again arrested. Thereafter, a neighbor contacted Ellis's parole

1

officer and reported that Ellis asked her to enter his apartment and remove a methamphetamine pipe, drugs, DVDs, and cell phones that were located inside a secret room that could only be accessed using a knife or screwdriver.

The parole officer contacted Ellis's landlord and arranged to meet with him the next day. Upon meeting the landlord, the parole officer mentioned that the items were located in a secret room. The landlord explained that the secret room was actually a maintenance storage room on the porch outside of Ellis's apartment and that only the landlord and maintenance workers were supposed to access the room. The landlord also explained that the maintenance storage room had an exterior entrance from the porch and an interior access in Ellis's apartment, which did not have a door handle. The landlord and parole officer went to the exterior door on the porch and the landlord opened the door. After looking in, it was determined that the area had been "closed." The landlord went to his vehicle to retrieve a screwdriver while the parole officer waited for a police officer to arrive. After a police officer arrived, the landlord, parole officer, and police officer entered Ellis's apartment and opened the interior access of the maintenance storage room using a screwdriver. The officers discovered pornographic DVDs, drug paraphernalia, controlled substances, and cell phones inside the maintenance room. After searching one DVD, the parole officer noticed several file names consistent with child pornography. A detective reviewed two DVDs and found child pornography and a search warrant was obtained to conduct subsequent searches of the DVDs.

Ellis was charged with ten counts of possession of sexually exploitative material and a sentencing enhancement for a prior conviction of a registerable sex offense, Idaho Code § 19-2520G. Ellis filed a motion to suppress all the evidence obtained during the search of his apartment, which the district court denied. Ellis entered a conditional guilty plea in which he pled guilty to two counts of possession of sexually exploitative material, preserving his right to appeal the denial of his suppression motion. Ellis timely appeals.

**II.**

**ANALYSIS**

Ellis claims that the district court erred by denying his motion to suppress evidence. Specifically, Ellis argues that the State violated his federal and state constitutional rights to be free from unreasonable searches and seizures when law enforcement entered his apartment without a warrant and subsequently discovered contraband in the maintenance storage room.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*[1]

In the instant case, the district court denied Ellis's motion to suppress on the following grounds: (1) Ellis did not have standing to challenge the admission of evidence because he did not have a reasonable expectation of privacy in the maintenance storage room; (2) Ellis waived his Fourth Amendment right to be free from unreasonable searches pursuant to a parole agreement and the parole agreement was still in effect when law enforcement entered his apartment; (3) law enforcement had exigent circumstances to enter Ellis's apartment because he requested that a neighbor remove the items from the maintenance storage room; and (4) the landlord had authority to consent and did actively consent to a search of the maintenance storage room.

Ellis challenges each ground on appeal. Ellis claims that law enforcement's entry into his apartment provided him with standing to challenge the search of the maintenance storage room. We need not decide whether Ellis had standing. Even if he had standing, we conclude the search

---

[1]    Although Ellis contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Ellis's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

of the maintenance storage room was valid pursuant to Ellis's Fourth Amendment waiver in his parole agreement and reasonable suspicion. Therefore, we do not address this issue.

Next, Ellis claims that his arrest and incarceration suspended his Fourth Amendment waiver in his parole agreement.[2] Accordingly, Ellis claims that the officers could not enter his apartment pursuant to the Fourth Amendment waiver. Idaho Code § 20-228 explains the effects of the issuance of a warrant and a subsequent arrest of a parolee:

> CONDITIONS OF PAROLE TO BE SPECIFIED IN WRITING--WARRANT FOR ARREST OF SUSPECTED VIOLATORS--EFFECT OF SUSPENSION AND ARREST. The commission for pardons and parole, in releasing a person on parole, shall specify in writing the conditions of parole, and a copy of such conditions shall be given to the person paroled. Whenever the commission finds that a parolee may have violated the conditions of parole, the written order of the commission, signed by a member or members of the commission or the executive director, shall be sufficient warrant for any law enforcement officer to take into custody such person, and it is hereby made the duty of all sheriffs, police, constables, parole and probation officers, prison officials and other peace officers, to execute such order. *Such warrant shall serve to suspend the person's parole until a determination on the merits of the allegations of the violation has been made pursuant to a revocation hearing.* From and after the issuance of the warrant and suspension of the parole of any convicted person and until arrest, the parolee shall be considered a fugitive from justice. Such person so recommitted must serve out the sentence, and the time during which such prisoner was out on parole shall not be deemed a part thereof; unless the commission, in its discretion, shall determine otherwise, but nothing herein contained shall prevent the commission from again paroling such prisoners at its discretion.

I.C. § 20-228 (emphasis added).

The district court found that Ellis's arrest did not terminate his Fourth Amendment waiver. The district court reasoned that the policy behind the Fourth Amendment waiver--to determine whether the parolee was truly rehabilitated and to determine the nature and extent of any prior violations--and the fact that Ellis had yet to have his parole revoked pursuant to a due process hearing, necessitated a finding that Ellis's custodial status did not terminate his waiver. Accordingly, the district court found that the officers' entry into Ellis's apartment was valid pursuant to Ellis's Fourth Amendment waiver.

---

[2] Ellis does not claim a privacy interest in the storage area, only in the apartment which was entered by the officers to access the maintenance storage room.

On appeal, Ellis claims that the district court erred by finding that his parole agreement, including his Fourth Amendment waiver, was still in effect when law enforcement entered his apartment. Ellis argues that the issuance of his arrest warrant suspended his status as a parolee and his subsequent arrest removed him from being under the supervision of the parole officer.[3] Therefore, Ellis argues that his arrest and incarceration, at least, "technically" terminated his parole agreement and his Fourth Amendment waiver.

Ellis points to *State v. Fuller*, 138 Idaho 60, 57 P.3d 771 (2002), for support. In that case, Fuller was released from parole in Oregon and transferred to Idaho. His parole agreement included a Fourth Amendment waiver. He violated his parole and Oregon issued an order suspending his parole. Subsequently, Fuller went to his Idaho parole officer for a scheduled appointment and the parole officer had him submit to a urinalysis. After Fuller tested positive for methamphetamine, the parole officer searched his vehicle and discovered drugs and paraphernalia. Fuller was arrested and charged with possession of methamphetamine. He filed a motion to suppress the evidence obtained from the search of his vehicle. The district court found that Oregon's order suspending Fuller's parole was akin to an arrest warrant and that, pursuant to I.C. § 20-228, the issuance of the arrest warrant suspended Fuller's parole status. *Fuller*, 138 Idaho at 62, 57 P.3d at 773. The district court concluded that since Fuller no longer had parole status, his parole officer no longer had authority to supervise him and no longer could ask him to submit to a urinalysis test or search his vehicle. The Idaho Supreme Court reversed, determining that Fuller remained under the supervision of the parole officer until he was taken into custody. *Id*. at 63, 57 P.3d at 774. The Supreme Court based its analysis on I.C. § 20-219, which provides, "The state board of correction shall be charged with the duty of supervising . . . all persons convicted of a felony *released* on parole or probation from other states and residing in the state of Idaho." I.C. § 20-219 (emphasis added). The Idaho Supreme Court determined that a parolee is *released* when he is allowed to be out of confinement. Using this reasoning, the Court held that even though an arrest warrant had been issued, Fuller was still released from

---

[3] Ellis also argues that the State failed to meet its burden of proving that a Fourth Amendment waiver was included in his parole agreement because the State never admitted the parole agreement in the record. Ellis did not raise this issue below. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Additionally, Ellis's motion to suppress indicates that Ellis agreed to the fact that a Fourth Amendment waiver was included in his parole agreement.

confinement and thus, was still under the supervision of his parole officer and his parole agreement. Therefore, the parole officer had authority to request a urinalysis and conduct a search of Fuller's vehicle. *Fuller*, 138 Idaho at 63, 57 P.3d at 774. Accordingly, the Idaho Supreme Court reversed the district court's order suppressing the evidence.

Although not directly on point, Ellis argues that *Fuller* stands for the proposition that a parolee's parole agreement only stays in force when the parolee is released from confinement. Ellis argues that since he was incarcerated at the time his apartment was entered into, he was no longer under the supervision of his parole officer and subject to his parole agreement. Therefore, his Fourth Amendment waiver was not in force and the officers' entry was in violation of his rights.

The State argues that Ellis's reliance on *Fuller* is misplaced because the Idaho Supreme Court determined that I.C. § 20-228 did not control in that case. The State argues that I.C. § 20-228 is controlling, as it states, "Such warrant shall serve to suspend the person's parole until a determination on the merits of the allegations of the violation has been made pursuant to a revocation hearing." I.C. § 20-228. The State argues that the suspension of parole only "suspended his limited physical freedom pending resolution of the parole violation charges." Further, the State argues that parole can only be revoked following a due process hearing and decision by the Parole Commission. Therefore, the issuance of a warrant and Ellis's subsequent arrest did not revoke his parole agreement or his Fourth Amendment waiver.

There is no Idaho statute that governs the termination of the parole agreement. Idaho Code § 20-228 explains that the issuance of an arrest warrant suspends a person's parole. Parole is defined as "[r]elease from jail, prison or other confinement after actually serving part of sentence." BLACK'S LAW DICTIONARY 1116 (6th ed. 1990).[4] Accordingly, the suspension of "parole," as explained in I.C. § 20-228, is the suspension of the parolee's liberty and physical freedom from incarceration. The next sentence in the statute clarifies this meaning, as it states that a "parolee shall be considered a fugitive from justice" until arrest. The statute does not say

---

[4] Of course, parole is subject to terms and conditions and it is those very terms and conditions that were allegedly violated, resulting in the loss of Ellis's freedom, by virtue of the warrant, arrest, and incarceration. While his right to be free is suspended pending a violation hearing, the statute does not say that the parole officer is rendered powerless to continue to enforce the terms during the suspension or investigate the alleged violations or other potential prior violations.

that all court orders pertaining to the conditions of parole are also suspended, but only refers to the parolee's liberty.

Further, if we were to adopt Ellis's view of the statute--that the issuance of a warrant suspends the parole agreement--a parolee would be allowed to unilaterally suspend his parole agreement by committing a wrongful act, and then would be able to commit further parole violations with impunity. The statute does not expressly provide for the parole agreement to be of no effect upon the issuance of a warrant or incarceration, pending revocation proceedings.

Although there is no Idaho case law on point, this reading of the statute is consistent with federal case law. The United States Supreme Court upheld a Wisconsin statute that allowed the warrantless search of a parolee's residence after the parolee's arrest. *Griffin v. Wisconsin*, 483 U.S. 868 (1987). In that case, the United States Supreme Court explained that probation requirements serve the goal of "genuine rehabilitation" and ensure that the "community is not harmed by the probationer's being at large." *Id.* at 875. Therefore, the Court determined that Wisconsin's statute fell within the "special needs" exception to the warrant requirement. *Id.* at 875-76. Thus, Wisconsin's statute allowing searches of parolees after incarceration was valid.

Several circuit appellate courts have also weighed in on this issue. In *United States v. Trujillo*, 404 F.3d 1238, 1242 (10th Cir. 2005), the Tenth Circuit addressed a similar issue presented by the instant case, but not based upon a statute. In *Trujillo*, a defendant was paroled from a Utah State prison and signed an agreement waiving his Fourth Amendment rights. The defendant violated his parole and a warrant was issued for his arrest. Police officers arrived at the defendant's house and arrested him while he was in his vehicle. Immediately after the arrest, police officers searched the defendant's residence and found weapons and drug paraphernalia. *Id.* at 1240-41. The Tenth Circuit held that the parole agreement did not terminate upon the arrest of the defendant. *Id.* at 1244. In so holding, the Tenth Circuit determined that "the government has an ongoing interest in obtaining information about the scope and severity of [the parolee's criminal activity]." *Id.* at 1243. Additionally, the Tenth Circuit concluded that the parolee's reduced privacy rights do not increase upon arrest. *Id.* at 1244. Thus, the Tenth Circuit determined a search soon after a parolee's arrest was valid, as a condition of the parole agreement, and that the parole agreement continued to be in force immediately following the parolee's arrest. *Id.* The court refrained from determining whether a search days or months after an arrest would still be valid under the parole agreement. *Id.* Further, the Tenth Circuit stated

"every other Court of Appeals that has encountered the issue . . . has concluded that an arrest does not immediately terminate a search provision in a parole or probation agreement." *Id.* at 1242. *See United States v. Hill*, 967 F.2d 902 (3rd Cir. 1992) (determining that the interest in inspecting a parolee's business did not terminate upon arrest but intensified; thus, the warrantless search of the parolee's business one day after his arrest did not violate the Fourth Amendment); *United States v. Jones*, 152 F.3d 680 (7th Cir. 1998) (where the court upheld a search of a parolee's residence following his arrest, determining that public policy and societal safety supported a state statute allowing such searches); *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975) (concluding that a parole officer's interest in searching a parolee's residence intensifies following the parolee's arrest and is a reasonable search).

Based on the foregoing, we conclude that Ellis's arrest and incarceration did not terminate his Fourth Amendment waiver to his parole agreement. Although his liberty and physical freedom were suspended upon arrest, the applicable terms and conditions of his parole, such as the Fourth Amendment waiver, remained operative until revoked through a due process hearing. Accordingly, the entrance into Ellis's apartment and the subsequent search of the maintenance storage room was valid and the district court did not err by denying Ellis's motion to suppress.[5]

In addition, the State argues that regardless of the waiver the search was a parole search justified by reasonable suspicion and therefore, constitutionally proper.[6] Parolees and

---

[5] Ellis also claims that the district court erred by finding that exigent circumstances and consent allowed the officers to enter his apartment without a warrant. Ellis claims that the exigent circumstances exception to the warrant requirement was inapplicable because law enforcement did not have a reasonable belief that evidence would be destroyed if they did not act immediately. He also claims that the consent exception was inapplicable because the landlord did not have authority to consent to the officers' entry into his apartment. We need not reach these issues, as we have concluded that the entry into the apartment was valid pursuant to Ellis's Fourth Amendment waiver in his parole agreement.

[6] The State contends that this Court can affirm on this ground although not a ground expressly addressed by the district court. *See, e.g.*, *McKinney v. State*, 133 Idaho 695, 700, 992 P.2d 144, 149 (1999) ("If a district court reaches the correct result by an erroneous theory, this Court will affirm the order upon the correct theory."); *State v. Avelar*, 129 Idaho 700, 704, 931 P.2d 1218, 1222 (1997) (where the lower court reaches a correct result by a different theory, the appellate court will affirm the order on the correct theory).

probationers enjoy a reduced expectation of privacy against governmental intrusion. *Samson v. California*, 547 U.S. 843 (2006) ("[B]y virtue of their status alone, probationers do not enjoy the absolute liberty to which every citizen is entitled."); *United States v. Knights*, 534 U.S. 112 (2001) ("Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."). Thus, a probationer is subject to warrantless searches by a probation officer if that probation officer has a reasonable suspicion the probationer has violated probation. *Knights*, 534 U.S. at 121-22; *State v. Adams*, 146 Idaho 162, 164, 191 P.3d 240, 242 (Ct. App. 2008) (probation searches based on suspicion are reasonable "[e]ven in the absence of a warrantless search condition"). In *State v. Klingler*, 143 Idaho 494, 496-98, 148 P.3d 1240, 1242-44 (2006), the Idaho Supreme Court upheld the search of a probationer based on reasonable suspicion even though there was no Fourth Amendment waiver applicable at the time of the search. In *State v. Turek*, 150 Idaho 745, 748, 250 P.3d 796, 799 (Ct. App. 2011), this Court recognized that "well-developed law" in this area establishes that probation searches may be conducted without consent when the officers are called to investigate reasonable suspicion of violation of probation terms. *Id.* In reply, Ellis argues that the line of cases relied upon by the State are inapposite because he argues, as set forth above, that by virtue of I.C. § 20-228, he was no longer a parolee at the time of the search.

In this case, there is little doubt that the parole officer had reasonable suspicion of violations and, indeed, the district court found, although in its exigent circumstances analysis, that there was "probable cause to believe that the residence contained evidence of a crime." Although Ellis's liberty was rescinded upon his incarceration, the court orders pertaining to the conditions of his parole remained intact. Accordingly, Ellis was subject to a search based upon the officer's reasonable suspicion that he had violated his parole.

### III.

### CONCLUSION

Ellis failed to demonstrate that the district court erred by denying his motion to suppress evidence. Accordingly, Ellis's judgment and conviction for possession of sexually exploitative material is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**